(No. 16994.—Judgment affirmed.)
F. P. BROWNHOLTZ, Defendant in Error, *vs.* THE PROVIDERS LIFE ASSURANCE COMPANY, Plaintiff in Error.

*Opinion filed February 24, 1928.*

1. CORPORATIONS—*when contract of promoter is ratified after organization of company.* A contract of employment executed by the promoter of an insurance company with a district agent is ratified where, after the date of the recording of the certificate of incorporation, a resolution is adopted by the board of directors fully approving "all and every act" of the promoter, who was elected president and who as temporary president had signed the contract in behalf of the company prior to its complete incorporation.

2. CONTRACTS—*what provision does not render contract of employment lacking in mutuality.* A contract of employment of an agent of a corporation is not rendered lacking in mutuality by a provision that should the agent leave the company without its consent the agreement shall become void and all compensation due shall revert to the company, as such provision is not an option to terminate the contract but is a provision of forfeiture of compensation for leaving the company in violation of the contract.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

WILLIAM T. CHURCH, CHARLES M. HAFT, EGBERT ROBERTSON, HOWARD W. LEWIS, and FERRE C. WATKINS, for plaintiff in error.

HOYNE, O'CONNOR & RUBINKAM, and C. H. McDERMOTT, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendant in error, F. P. Brownholtz, filed a bill in the circuit court of Cook county against plaintiff in error, the Providers Life Assurance Company, for an accounting.

The master to whom the cause was referred found that defendant in error was entitled to an accounting and that there was due him on account $1578.65. A decree was entered for this amount, it was affirmed by the Appellate Court for the First District as to $1247.70, and a writ of *certiorari* was allowed by this court.

It is the contention of defendant in error that while plaintiff in error was in process of organization as a corporation to do an insurance business, various agents and superintendents, of whom defendant in error was one, were employed; that on December 10, 1915, prior to the completion of the organization, a contract of employment was signed; that after the organization was completed this contract was ratified by the board of directors of plaintiff in error; that defendant in error began work under the contract and continued for several months and was subsequently discharged by plaintiff in error without due cause, therefore this cause of action arose. Plaintiff in error contends that the contract of employment of December 10, 1915, was of no force and effect when it was executed, for the reason that plaintiff in error was not a corporation at that time; that after the organization was completed the contract was not ratified by the board of directors with full knowledge of its existence and conditions; also that the contract was lacking in mutuality.

The evidence shows that plaintiff in error was in process of organization during the latter part of 1915 and the first part of 1916. The certificate of incorporation was finally recorded on February 19, 1916. On December 10, 1915, a letter or contract was sent to defendant in error by Max Spiegel, who later became president of plaintiff in error. It notified defendant in error that plaintiff in error had appointed him as superintendent of district No. 6, in Chicago; that he was to act in all matters in accordance with the rules of the company; that he was not to advertise any business of the company, or anything about the company,

without the consent from the executive office; that he was to devote his entire time to the business of the company and was to buy fifteen shares of its stock. The company was to pay office rent, clerk hire and for supplies, pay defendant in error $40 per week salary, together with certain commissions specified in the contract. Should any question arise pertaining to the business the decision of the company was to be accepted as final. To all of the foregoing provisions the company and defendant in error agreed to be bound alike, the contract was not to be terminated by either party until one year from the date of the opening of the district office for the purpose of soliciting and procuring applications, but should defendant in error leave the company without its consent the agreement was to become *ipso facto* null and void and all compensation that might belong to defendant in error was to revert to the company. The company was not to be liable for any compensation to defendant in error for services rendered under the agreement until after the company should be licensed to transact business. The agreement was to be in full force and effect when it was signed by the authorized officer of the company and by defendant in error. It was signed, "The Providers Life Assurance Company, M. Spiegel, President, authorized officer." Defendant in error, over his signature, approved and accepted the contract and agreed to be bound by its terms.

On February 20, 1916, the directors were elected by the stockholders. Max Spiegel was elected as a director and was later elected as president and a member of the executive committee, which was authorized to appoint necessary officers, agents and servants. On February 23, 1916, the directors passed a resolution which recited that "whereas Mr. Max Spiegel, as promoter and organizer of the company, has filled the office of temporary president and had full charge of the sale of the shares of stock of the company and was also in charge of all receipts and disburse-

ments; and whereas, the board of directors, now acting by virtue of the election, etc., has acquired full knowledge of the affairs of the company as appearing on this day, and has also made careful examination into the affairs and transactions of said Max Spiegel during the period of organization of the company; now, therefore, it is resolved that this board of directors fully approves all and every act of the said Max Spiegel during said period of organization." On the same date Spiegel was elected as general manager. Defendant in error began work under his contract immediately upon the completion of the corporation and continued until June 24, 1916. On May 1, 1916, he received from Spiegel a letter, which said in part: "I am congratulating you on the splendid report we received from your district for the week ending April 29." On June 24, 1916, he received another letter from Spiegel in which Spiegel said that it was with considerable regret that the company found itself under the necessity of dispensing with the services of defendant in error; that the conditions in his district were such as to prove his unfitness for the position; that the company had extended to him every facility for making a success, and the writer had exerted himself, in the face of constant protest on the part of the executive committee, to maintain him in his position; that things had come to such a pass that it was impossible to retain him in the service of the company without inflicting material loss, such as a new company should not suffer, because of the inefficiency of any employee; that seventeen applications which had been rejected had been re-written within a period of a few weeks; that in most cases the same agent re-wrote the rejected party; that the company was at a loss to understand how this could have escaped the attention of defendant in error, and the fact that it did escape his attention demonstrated that he was not competent to discharge the duties of head of the district; that he had confined himself almost entirely to colored business and had

created discontent among his colored staff, which was on the verge of disruption because of the bias and prejudice which he had shown. Complaint was made that reports were not made at the time required by the rules of the company; that there was an unnecessary outlay for medical inspection not in keeping with what an insurance man of experience and intelligence would permit; that during May, out of 500 applications received, 175 were rejected. After this letter was received by defendant in error he left the employ of the company and the suit in this case was filed to recover the amount due him.

Many cases are cited by plaintiff in error in support of its contention that a contract cannot be executed by a corporation before it is organized, and that a contract of that kind cannot be ratified by a corporation after it is organized unless the directors have knowledge of the terms and conditions of the contract. The authorities cited announce correct rules of law but they are not applicable to the facts in this case. The evidence shows that the preliminary work of forming an organization to operate this corporation was in the hands of Spiegel. Prior to the completion of the corporation he made tentative contracts with various persons, including defendant in error, to work for the corporation. These contracts were not binding until after the corporation was fully organized, but the recital in the minutes of February 23, 1916, fully sustains the contention that this contract was ratified by the board of directors, not only with full knowledge of its existence but with full knowledge of its terms. Defendant in error went to work for the company in the performance of the duties provided in his contract and continued to work for at least four months and receive compensation. These acts constituted a full and complete ratification of the contract so as to make it binding upon plaintiff in error. *Streator Telephone Co.* v. *Continental Co.* 217 Ill. 577; *Reichwald* v. *Commercial Hotel Co.* 106 id. 439.

The contention that the contract is lacking in mutuality is based upon the paragraph which provides that it shall be binding upon both parties alike and cannot be terminated by either until one year from the date of the opening of the district office, but should defendant in error leave the company without its consent the agreement shall become *ipso facto* null and void and all compensation due him shall revert to the company. The last sentence of this paragraph does not mean, as contended by plaintiff in error, that defendant in error had the right and option, at any time within a year of the opening of the office, to terminate the contract and quit the services of the company. The language used clearly negatives such a construction. What the last sentence means is, that if defendant in error, before the expiration of the contract, leaves the company, not under an option to do so but in violation of the terms of the contract, he shall forfeit any compensation due him at that time. Such a provision does not render the contract void on the ground that it is not mutual.

It is insisted by plaintiff in error that defendant in error violated the terms of his contract in the various manners specified in the letter of June 24, 1916, and that plaintiff in error was justified in terminating his employment and is not liable for any amount of salary which he would otherwise be entitled to receive. The burden of proof was upon plaintiff in error to prove by a preponderance of the evidence that defendant in error was guilty of such a breach of contract as justified the company in terminating the contract. It is apparent from the letter of May 1, 1916, that until that time there was no serious breach of contract. The letter of June 24, 1916, contains the charges upon which defendant in error was discharged. No good purpose would be served in considering the evidence in detail. From the examination we have made we cannot say that the chancellor was in error in finding that the evidence

did not justify plaintiff in error in discharging defendant in error.

No question is raised either as to the jurisdiction of the trial court or as to the amount found due by the Appellate Court.

We find no reversible error, and the judgment of the Appellate Court will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*