# Illinois Official Reports

## Appellate Court

---

**_Chiurato v. Dayton Estates Dam & Water Co._, 2017 IL App (3d) 160102**

---

| | |
|---|---|
| Appellate Court Caption | JOHN CHIURATO, DENNIS CORBIN, and MICHELE CIONI, Plaintiffs-Appellants, v. DAYTON ESTATES DAM & WATER COMPANY, an Illinois Not-for-Profit Corporation; JOSEPH NAVARRO; WENDY NAVARRO; ROBERT POTUSNA THOMAS GROSS; KAY GROSS; KEVIN CLEARY; JANICE CLEARY; KEN BRUNS; SUSAN BRUNS; DREW FERRACUTI; LISA FERRACUTI; MARGARET NEVIN; ROBERT NEVIN; FRANK LESS; SUE LESS; RYAN REYNOLDS; ELIZABETH REYNOLDS; TOM MARATEA; LISA MARATEA; JOHN POLEN; LYNN POLEN; LINOLA TOTEL; DON & MICHELLE VRTIS; MAURICE & SUE JOHNSON; LAWRENCE POWELL; ARMELLA OLSEN; DWAYNE DAVIS; ARTURO & RUTH THOMAS; HENDRICK & LAVERNE DeGELDER; ROBERT & DIANE SOLBERG; SCOTT & MELISSA TRAVI; TERRY & JONI ANDERSON; KEITH & PAT SEVERSON; LUKE & KATHY CARUSO; WILLIAM AHLFIELD; CHRISTOPHER ANDREE and CHARISSA ANDREE, Defendants (Dayton Estates Dam & Water Company, Joseph Navarro, Robert Potusna, Thomas Gross, Kevin Cleary, Ken Bruns, Drew Ferracuti, Margaret Nevin, Frank Less, Ryan Reynolds, Tom Maratea, and John Polen, Defendants-Appellees). |
| District & No. | Third District<br>Docket No. 3-16-0102 |
| Filed | July 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 09-CH-161; the Hon. Robert C. Marsaglia, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | William F. Knee, of Beyer & Knee, of Mount Prospect, for appellants. |
| | Eric B. Deobler, of White, Marsh, Anderson, Martin, Vickers, Deobler & Goode, of Ottawa, for appellee Dayton Estates Dam & Water Company. |
| | Matthew G. Brothers and Brian J. Hunt, of The Hunt Law Group, LLC, of Chicago, for appellees John Polen and Margaret Nevin. |
| | Brad A. Elward and Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, and Darrell K. Seigler, of Darrell K. Seigler Ltd., of Ottawa, for other appellees. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Justices O'Brien and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiffs John Chiurato, Dennis Corbin, and Michele Cioni are homeowners in a residential community known as Dayton Estates. Defendant, Dayton Estates Dam & Water Company, is a not-for-profit corporation created in part for the purpose of maintaining a dam and lake that previously existed in the subdivision. In August 2007, the dam failed, and the lake emptied. Plaintiffs filed a complaint seeking declaratory judgment and alleging breach of contract against the company and the members of the board—Joseph Navarro, Robert Potusna, Thomas Gross, Kevin Cleary, Ken Bruns, Drew Ferracuti, Margaret Nevin, Frank Less, Ryan Reynolds, Tom Maratea, and John Polen—for failing to rebuild the dam.[1]

¶ 2 Defendants moved for summary judgment, alleging that Dayton Estates Dam & Water Company is not a homeowners association operating a common interest community under section 9-102(c) of the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-102(c) (West 2014)) and moved to dismiss plaintiffs' breach of contract claim against the company. The individual board members also filed motions for summary judgment seeking dismissal of the breach of contract claims. The trial court granted summary judgment on the declaratory judgment counts and dismissed plaintiffs' breach of contract claims against the company and the individual board members with prejudice. We affirm.

---

[1]The remaining defendants are homeowners in the subdivision who were joined by court order.

## BACKGROUND

Dayton Estates is a residential community in Dayton Township near Ottawa. The community consists of two subdivisions, Dayton Estates and Dayton Estates West. In June 1973, the First National Bank of Ottawa, as trustee, and developer Walter Scherer, Jr., recorded a plat and declaration of covenants and restrictions for Dayton Estates subdivision. The covenant noted that it was the desire of the developer to create a community of country homes and set forth certain restrictions as to the use of each lot and included common restrictions, such as no additional buildings or fences without written approval from the developer or his agent. The developer also reserved the right to flood portions of lots 10 through 14 to create a lake that would be available for use by all the lot owners.

The declaration was amended in March 1974 to change the contour flood line and again in April 1975 to include the creation of a not-for-profit corporation known as "Dayton Estates Dam & Water Company." Specifically, the second amendment to the declaration stated that the owners of each lot in Dayton Estates:

> "shall automatically be and become a member of the not-for-profit corporation known as Dayton Estates Dam & Water Company which corporation has been established by the Developer for the purpose of maintaining the dam which forms the lake on the Westerly side of the subdivision and for owning and operating any centralized system that may in the future be constructed for the furnishing of water to all of the lots in the subdivision and in the companion subdivision on the westerly side of said lake known as Dayton Estates West. Each member of said not-for-profit corporation shall be subject to assessment for a pro-rata share of such expenses that might be incurred by said corporation for such purpose."

On May 8, 1975, the developer and the trustee recorded a declaration of covenants and restrictions for Dayton Estates West that contained the same covenants and restrictions as those in the Dayton Estates declaration. It reserved the right to flood a portion of lots 10 through 14 for the lake and provided membership in the dam and water company to each lot owner in Dayton Estates West.

Three weeks later, Dayton Estate Dam and Water Company was created by articles of incorporation. The articles of incorporation were filed with the Secretary of State on May 28, 1975, and recorded in the county recorder's office on June 4, 1975. According to paragraph 5 of the articles of incorporation, the purpose of the company was:

> "(a) maintenance of a dam across the stream known as Sunnybrook Creek *** situated between the Subdivisions known as Dayton Estates and Dayton Estates West.
>
> (b) The construction and installation of a centralized system for the furnishing of water to all lots in Dayton Estates and Dayton Estates West ***.
>
> (c) To hold the legal title to that strip of real estate situated immediately between the aforesaid subdivisions known as Dayton Estates and Dayton Estates West, and such other real estate as may be required to fulfill the purposes of the corporation."

Paragraph 7 also provided that the owner of each lot was subject to assessment, as specified in the bylaws, for expenses incurred for the corporate purpose. Finally, the articles stated that "the obligation of maintaining the dam specified in Paragraph 5(a) hereof, and power to access the members specified in Paragraph 7, may not be altered or deleted by amendment *** without consent of the County Board." The articles of incorporation were signed by Walter Scherer, Jr.,

Walter Scherer, Sr., and Margaret Scherer, who also named themselves as the board of directors.

¶ 8    Bylaws were adopted by the company in accordance with state law. The bylaws, as adopted, describe the governing body and provide the date for annual membership meetings for election of directors and the transaction of business. Annual meetings are set on the second Monday in March of each year. The bylaws also give the board of directors the power to manage the company and authorize assessments on the members. The bylaws may be amended by the board of directors.

¶ 9    From 1976 to 1986, the annual report filed by the company with the Secretary of State required a brief statement as to the corporate purpose. The report generally indicated that the purpose of the company was to maintain a dam and lake for private recreation. Beginning in 1987, the Secretary of State amended the form to include "yes" or "no" answers to whether the company was a condominium association, a cooperative housing association, or a homeowners association operating a common interest community as defined in section 9-102 of the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2008)). The first year, the company responded by answering "no" to all three questions. Beginning in 1988, the officers checked "yes" to the third question, indicating that the company was a homeowners association operating a common interest community.

¶ 10    On September 15, 1992, a document was recorded in the county recorder of deeds office entitled, "Appointment of Successor Developer." The document appointed and designated the board of directors of the Dayton Estate Dam & Water Company as the successor to the developer under the declaration of covenants and restrictions of the subdivision recorded in 1975. In a related lawsuit filed seven months later, the Dayton Estates Dam & Water Company filed a complaint against Dayton Estates West lot owners, Maurice and Sue Johnson, to enforce a 10-foot setback requirement contained in the declaration of covenants and restrictions. In October 1993, the trial court entered a default judgment in the company's favor, ordering defendants to remove their utility building from within 10 feet of the boundary of their lot.

¶ 11    As early as 1997, issues with the dam and the need for repairs were discussed by board members and reviewed at annual meetings. However, a vote was never brought before the board or its membership, and no company action was taken. After the dam failed in August 2007, the company explored financing options for repairing or replacing the dam. An emergency annual meeting was held on August 30, 2007. At that meeting, eight members were elected to the board, including plaintiffs Chiurato and Cioni. Chiurato was appointed as president, and Cioni was appointed as vice president. Repairs to the dam were the central topic discussed at the meeting. A committee was formed to contact the Illinois Department of Natural Resources and solicit contractors for repairs. The board of directors met again that fall to discuss engineering estimates and various repair options.

¶ 12    In 2008, the company retained a local law firm to provide a legal opinion regarding a small business loan to pay for preliminary engineering costs. A corresponding letter from the company's attorney referred to the company as an "association" and opined that the company had the right and duty to make any repairs or improvements identified in the loan application.

¶ 13    The members gathered at an annual meeting again on March 12, 2008, and adopted a resolution to accept a $39,600 loan offered by the Small Business Administration for engineering study costs. At the beginning of the meeting, Chiurato was reelected as president.

The following members were also elected to the board: Don Vrtis, Robert Solberg, Kevin Cleary, Bob Potusna, Dennis Corbin, Ken Bruns, and Tom Gross. With the exception of Chiurato and Corbin, all are named as defendants in this case.

¶ 14    The board met in May 2008 for an update from the engineering firm. The company was presented with a rebuilding estimate of $478,509 to $710,015, and members of the board expressed concern that the project was cost prohibitive. In February 2009, Chiurato and Corbin attempted to call a meeting and demand a vote of the board of directors approving the dam repair. But no notice of the meeting was transmitted to the other board members.

¶ 15    At the annual membership meeting on March 10, 2009, the dam repair project was again discussed. A vote to finance the repair was not taken. A new board was then elected. Two members were voted in to replaced Chiurato and Corbin: (1) Margaret Nevin, who previously served on the board from 1993 to 1995, and (2) John Polen, who had never served before.

¶ 16    On March 9, 2009, one day prior to the annual meeting, plaintiffs filed a declaratory judgment action against defendants, seeking to force the company to rebuild the dam and requesting money damages. The complaint named the company and the individual members of the board as defendants. Following an initial hearing and oral arguments, the trial court entered a preliminary injunction prohibiting the company from taking any action to change the dam until the rights of the parties were fully adjudicated.

¶ 17    From 2009 to 2014, numerous amendments to the complaint were filed, and several counts were dismissed. The remaining lot owners were also added as necessary parties at the trial court's direction but did not participate in the proceedings.

¶ 18    On March 10, 2014, plaintiffs filed an eighth amended complaint reasserting the surviving counts and attaching the declarations of covenants and restrictions, articles of incorporation, and bylaws as exhibits. Count I requested a declaratory judgment that the company was a homeowners association administering a common interest community within the meaning of section 9-102(c) of the Act. Count II requested a declaratory judgment that the company, as a homeowners association, had an absolute duty to rebuild the dam. Counts III and IV were previously dismissed. Count V prayed for a mandatory injunction against the company ordering it to rebuild the dam. Count VI alleged breach of fiduciary duty against individual board members, past and present, for failing to take necessary steps to repair the dam, despite the language of the governing documents of the company. Last, count VII alleged a breach of contract claim against Dayton Estates Dam & Water Company, claiming that the declaration of covenants, articles of incorporation, and bylaws created a binding contract between the company and its members that obligated the company to maintain and repair the dam. Plaintiffs alleged that by refusing to rebuild the dam, the company breached its contractual duty and sought damages against the company for failing to rebuild it.

¶ 19    The company moved to dismiss count VII under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). The trial court dismissed that count with prejudice, finding that the corporate bylaws were adopted and drafted after the recording of the covenants and did not form a contractual obligation between the landowners and the company to rebuild the dam.

¶ 20    Plaintiff then filed a ninth amended complaint without any alterations to counts I, II, V, or VI. The company moved for summary judgment on counts I and II. In its motion, the company argued, among other things, that the covenants and articles of incorporation did not impose a corporate purpose on the company to act as a homeowners association operating a common interest community. The trial court found that the company did not act as a homeowners

association and granted the company's motion. The court also found that the board was not acting in bad faith and dismissed count VI against the individual defendants named in their capacity as board members.

¶ 21 The company then moved to dismiss count V, claiming that it was remedial in nature and made moot by the dismissal of counts I and II. The trial court agreed and granted the motion, which disposed of all issues and parties in the litigation.

¶ 22 ANALYSIS

¶ 23 On appeal, plaintiffs maintain that the trial court erred in granting defendants' motions and ultimately dismissing all of the claims in their amended complaints. Various counts were dismissed at different stages in the pleading process. We will address the arguments on appeal in the order in which they were ruled on by the trial court.

¶ 24 I

¶ 25 Plaintiffs contend that the trial court erred in dismissing count VII of plaintiffs' eighth amended complaint, alleging breach of contract against the company. Plaintiffs argue that the recorded covenants, articles of incorporation, and bylaws of the company constitute a binding contract between the company and its members that obligates the company to maintain the dam. They contend that by failing to repair and rebuild the dam the company has breached the contract.

¶ 26 The standard of review on appeal from a motion to dismiss a complaint is whether the complaint, when viewed in the light most favorable to the nonmoving party, alleged facts that sufficiently stated a cause of action. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583 (1993). A reviewing court must take all well-pleaded facts in the challenged complaint as true. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634 (1996). However, a motion to dismiss does not admit conclusions of law or fact unsupported by allegations of specific fact upon which those conclusions can rest. *Id.*

¶ 27 The general rule for pleading the existence of a contract turns on the elements of an offer, a strictly conforming acceptance, and supporting consideration. *City of Burbank v. Illinois State Labor Relations Board*, 185 Ill. App. 3d 997, 1002-03 (1989). The necessary ultimate fact to establish a contract and breach thereof must be adduced in the complaint to survive a motion to dismiss. See *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981).

¶ 28 Because the facts are not disputed and declarations of covenants and restrictions are covenants running with the land, we must examine the language of the declarations to determine whether dismissal was appropriate. *Carney v. Donley*, 261 Ill. App. 3d 1002, 1008 (1994). A covenant is a contract to which the ordinary rules of contract construction apply. *Xinos v. Village of Oak Brook*, 298 Ill. App. 3d 520, 524 (1998). Where the covenants are unambiguous and the intent of the parties can be determined by the covenants' explicit provisions, courts should effectuate that intent without relying on extrinsic aids. *Board of Directors of Olde Salem Homeowners' Ass'n v. Secretary of Veterans Affairs*, 226 Ill. App. 3d 281, 286 (1992). A clear and unambiguous contract term must be given its plain and ordinary meaning, and that interpretation may be used by the court to grant a motion to dismiss. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000).

¶ 29    On *de novo* review, we find that plaintiffs have failed to plead facts sufficient to state a cause of action against the company for breach of contract. There were few well-pleaded facts in the complaint that support the existence of a contract. Count VII of the complaint claimed that defendants breached their contractual obligation to repair and rebuild the dam. Reading the covenants as a whole, we agree that there was a clear intent in the declarations of Dayton Estates and Dayton Estates West that the company should have broad authority to manage the lake real estate and maintain the dam that formed it. However, we do not agree that the covenants recorded by the developer and the trustee impose a contractual obligation on the company to replace the dam.

¶ 30    The unambiguous language of the covenants provides that the only relationship the lot owners had with the company is the agreement to pay assessments. In exchange for paying the assessments, the lot owners were granted automatic membership in the company. Under the plain terms of the first amended declaration of Dayton Estates, the developer also had the right to flood lots 10 through 14 to create the lake. However, that amendment does not provide that the developer or the company has the duty to repair and replace the dam. In addition, the second amended declaration states that the company has been created for the purpose of maintaining the dam that created the lake, but it does not impose any obligation to replace the dam in the event of failure. Thus, the covenants do not create a contractual obligation on the part of the company to maintain the existence of a dam on a permanent basis.

¶ 31    Plaintiffs allege in their complaint that the corporate documents, together with the covenants, create a contract that requires the company to rebuild the dam. We find these allegations insufficient to support their breach of contract claim for two reasons.

¶ 32    First, when two or more agreements are executed by different parties, they cannot be regarded as one instrument. See *Illinois Housing Development Authority v. La Salle National Bank*, 139 Ill. App. 3d 985, 989 (1985). In this case, the declarations of covenants were executed by the First National Bank of Ottawa and the developer, Walter Scherer, Jr. The articles of incorporation were executed by Walter Scherer, Jr., Walter Scherer, Sr., and Margaret Scherer, and the bylaws were passed by the board of directors of the company. Even though plaintiffs may claim that the execution of the second amended declaration for Dayton Estates was executed simultaneously with the articles of incorporation, these documents were not executed by the same parties. Although it is possible for an instrument to incorporate another agreement even if the parties executing the documents are not identical, it is a fundamental principle of contract law that the incorporating instrument must do so by express reference, demonstrating an intent to incorporate the other agreement into the contract. *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 743 (2011). Here, neither the articles of incorporation nor the company's bylaws expressly reference the declarations of covenants for Dayton Estates or Dayton Estates West or the amended declarations.

¶ 33    Second, it is well settled in Illinois that for-profit corporations are not liable for debts contracted for services rendered under a contract with its incorporators prior to its organization unless the corporation has expressly promised to undertake the liability after its organization. *Erd v. Rapid Transit Co.*, 206 Ill. App. 351, 354-55 (1917). A preincorporation contract may be binding upon a corporation only if the contract is specifically ratified by the board of directors. *Brownholtz v. Providers Life Assurance Co.*, 329 Ill. 42, 46 (1928). The same logic applies to preincorporation liability of a not-for-profit company.

¶ 34    In this case, there is no allegation that the company expressly ratified any contractual obligation to enforce the covenants of Dayton Estates West. Moreover, there are no facts in the corporate documents attached to the complaint that support the allegation that the company expressly ratified any obligation to enforce the covenants previously recorded or to be legally liable to repair and rebuild the dam for the lot owners' benefit. Plaintiffs allege that there is contractual obligation of the members to adhere to the covenants. While such an obligation exists, it is only because they are lot owners of the Dayton Estates West subdivision, not because of their membership in the company.

¶ 35    Plaintiffs failed to allege sufficient facts to support their breach of contract claim against Dayton Estates Dam & Water Company. Accordingly, the trial court properly dismissed count VII of plaintiffs' eighth amended complaint.

¶ 36                                                              II

¶ 37    Plaintiffs also contend that the trial court erred in granting summary judgment in defendants' favor on counts I and II of their ninth amended complaint. They claim that Dayton Estates Dam & Water Company is a homeowners association "administering a common interest community" and that the designation imposes certain duties on the company, including the duty to rebuild the dam.

¶ 38    Summary judgment is appropriate where the pleadings, depositions, admissions and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). This court conducts a *de novo* review of an order granting summary judgment. *Hall*, 208 Ill. 2d at 328.

¶ 39    As a general rule, a homeowners association has the power to enforce subdivision covenants as an underlying contract between the developer and the property owners. See *Forest Glen Community Homeowners Ass'n v. Bishof*, 321 Ill. App. 3d 298, 303-04 (2001); *Westfield Homes, Inc. v. Herrick*, 229 Ill. App. 3d 445, 451-52 (1992). Here, plaintiffs are attempting to impose the duty to rebuild the dam on the company by claiming that the company is a homeowners association. Plaintiffs claim that if the company is found to be a homeowners association, the company has the power as a matter of law to enforce the covenants. Plaintiffs' argument assumes the existence of a contract or a duty created by the covenants to rebuild the dam. As previously determined, however, a contractual duty to rebuild the dam does not exist.

¶ 40    Even if the covenants created a contractual duty, we are not convinced that Dayton Estates Dam & Water Company meets the definition of a homeowners association "administering a common interest community."

¶ 41    A homeowners association is described in the Forcible Entry and Detainer Act as an association that establishes and administers "a common interest community." 735 ILCS 5/9-102 (West 2014). Section 9-102(c)(1) of the Act defines a "common interest community" as "real estate other than a condominium or cooperative with respect to which any person by virtue of his or her ownership of a partial interest or unit therein is obligated to pay for maintenance, improvement, insurance premiums, or real estate taxes of other real estate described in a declaration which is administered by an association." 735 ILCS 5/9-102(c)(1) (West 2014). The lot owners of Dayton Estates are required by the terms of the declaration of covenants and restrictions to pay assessments for the maintenance of the dam that created the

- 8 -

lake. However, the covenants, articles of incorporation, and bylaws do not specifically refer to the company as "a homeowners association" or a "common interest community." Moreover, the company holds title to the real estate on which the dam was constructed and a portion of the lake. The subdivision lot owners do not own the real estate owned by the company. Also, the recorded plats of Dayton Estates and Dayton Estates West do not describe the real estate owned by the company. Therefore, the company does not qualify as a homeowners association under section 9-102 of the Act because the covenants do not describe the lake real estate for which the lot owners are obligated to pay for maintenance, insurance premiums, or real estate taxes under the corporate documents. See 735 ILCS 5/9-102(c)(1) (West 2014).

¶ 42    The trial court properly concluded that the company was not a homeowners association administering a common interest community. Thus, the court did not err in granting summary judgment in defendants' favor on count I.

¶ 43                                    III

¶ 44    Because the trial court properly granted summary judgment on count I, we need not address plaintiffs' argument that the court erred in failing to address whether the company, as a homeowners association, had a duty to repair the dam as alleged in count II.

¶ 45                                    IV

¶ 46    Last, plaintiffs argue that the trial court erred in granting summary judgment on count VI of their ninth amended complaint alleging breach of fiduciary duty in favor of defendants Navarro, Potusna, Gross, Cleary, Bruns, Ferracuti, Nevin, Less, Reynolds, Maratea, and Polen. Plaintiffs claim that during their tenure as members of the board of directors, defendants were aware, or should have been aware, of the deteriorating condition of the dam, which led to the dam's failure, and their duty to maintain the dam. They argue that these defendants breached their fiduciary duty to plaintiffs because they failed to take the necessary steps to repair the dam when they were members of the board.

¶ 47    The proper exercise of a board's fiduciary or quasi-fiduciary duty requires strict compliance with the declarations and bylaws, specifically when the declarations and bylaws provide procedures to govern board actions. *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 62 (*Wolinsky II*); *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 534 (1983) (*Wolinsky I*). Moreover, the board of directors of a condominium association or a similar homeowners association owes a fiduciary or quasi-fiduciary duty to the association members to act in a manner reasonably related to the exercise of that duty. *Schweickart v. Powers*, 245 Ill. App. 3d 281, 290 (1993). Absent allegations of bad faith, fraud, illegality, or gross overreaching, courts are not at liberty to interfere with the exercise of the judgment of corporate directors. *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1016 (1993). That judgment enjoys the benefit of a presumption that it was formed in good faith and designated to promote the best interests of the corporation they serve. *Id.* at 1015-16. These fiduciary principles and business judgment rules apply to condominium and common interest community association directors. *Wolinsky II*, 2013 IL App (1st) 111186, ¶ 65.

¶ 48    In this case, there is no evidence of breach of fiduciary duty by an individual director. Moreover, count IV does not allege fraud, bad faith, or gross overreaching. It simply alleges that defendants "failed to take the necessary steps to repair the dam" despite the language of the "governing documents" of the company. The documents attached to the eighth amended

complaint show that the directors engaged in diligent immediate efforts to deal with the breach of the dam in August 2007. Those efforts included contacting an engineer to complete a study regarding repairing or replacing the dam, reaching out to the Illinois Department of Natural Resources as to specifications and classifications of a newly constructed dam, and securing SBA financing for the engineering services. The dam had not been repaired or replaced on March 10, 2009, because the company was still investigating its options and the cost of replacing the dam appeared to be significant. There is no allegation in the complaint and no evidence in the record that the defendants failed to exercise due care in carrying out their corporate duties or that their actions failed to protect the best interests of the company's members. Accordingly, the trial court properly granted summary judgment in favor of Navarro, Potusna, Gross, Cleary, Bruns, Ferracuti, and Reynolds.

¶ 49 Turning to the remaining directors, Nevin served as a director between 1993 and 1995, and Polen never served on the board prior to his March 10, 2009, election. Nevin and Polen were not directors serving on the board when the dam failed in August 2007, nor were they directors when plaintiffs filed their complaint. They were newly elected on March 10, 2009, and there is no evidence in the record that they engaged in a breach of fiduciary duty after that date. The trial court properly dismissed them as a matter of law.

¶ 50 Like Nevin and Polen, directors Maratea and Less were elected as company directors on March 10, 2009, the day after plaintiffs filed their complaint. On July 27, 2009, the court entered a preliminary restraining order that prohibited the company from taking any action to change the dam until the rights of the parties could be fully adjudicated. Thus, there is no evidence in the record that these two directors engaged in a breach of fiduciary duty before or after March 10, 2009. Thus, the trial court did not err in granting summary judgment on count VI of plaintiffs' ninth amended complaint alleging breach of fiduciary duty as to the individually named board members.

¶ 51                                          CONCLUSION
¶ 52 The judgment of the circuit court of La Salle County is affirmed.

¶ 53 Affirmed.