# Illinois Official Reports

## Appellate Court

---

**1400 Museum Park Condominium Ass'n v. Kenny Construction Co.,**
**2021 IL App (1st) 192167**

---

| | |
|---|---|
| Appellate Court Caption | 1400 MUSEUM PARK CONDOMINIUM ASSOCIATION by Its Board of Managers, Plaintiff-Appellant, v. KENNY CONSTRUCTION COMPANY and FRANKS MECHANICAL CONTRACTORS, INC., Defendants (Kenny Construction Company, Defendant-Appellee). |
| District & No. | First District, Fourth Division No. 1-19-2167 |
| Filed | August 5, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-L-11692; the Hon. Brigid M. McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey S. Youngerman, Stephen D. Sharp, and Christopher L. Gallinari, of Flaherty & Youngerman, P.C., of Chicago, for appellant. Robert J. Franco and Randall W. Slade, of Franco Moroney Buenik, LLC, of Chicago, for appellee. |

Panel JUSTICE MARTIN delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion.

## OPINION

¶ 1	In *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 30, our supreme court held that a claim for breach of implied warranty of habitability is a "creature of contract, not tort" and therefore the purchaser of a newly constructed condominium unit may not pursue such a claim against a subcontractor where the subcontractor had no contractual relationship with the purchaser. We find the reasoning and analysis employed by our supreme court in *Sienna* to subcontractors applies equally as well to general contractors, and therefore we affirm.

¶ 2	I. BACKGROUND

¶ 3	"A condominium is an interest in real estate created by statute that gives each owner an interest in an individual unit as well as an undivided interest in common elements. Administration and operation of the condominium are vested in the condominium association, which is comprised of all unit owners. The administration is exercised through the board of directors, which is elected by the owners." *Board of Directors of 175 East Delaware Place Homeowners Ass'n v. Hinojosa*, 287 Ill. App. 3d 886, 889 (1997).

¶ 4	This appeal concerns claims arising out of alleged latent defects in the construction of the common elements of a condominium building. Specifically, the alleged defects were in the design, materials, and construction of the building's plumbing system.

¶ 5	In 2006, 1400 Museum Park, LLC (Museum Park), began construction of a 260-unit condominium building known as 1400 Museum Park Condominiums located at 100 E. 14th Street in Chicago, Illinois. Museum Park, acting as the developer, hired Kenny Construction Company (Kenny) as its general contractor. Franks Mechanical Contractors, Inc. (Franks Mechanical), was hired as the plumbing subcontractor.[1] Construction of the building was completed in 2008.

¶ 6	From 2008 through 2011, Museum Park sold the condominium units to prospective purchasers pursuant to individual sales contracts. At some point after all units were sold, and subsequent to the presumed dissolution of Museum Park,[2] the unit owners formed a condominium association, 1400 Museum Park Condominium Association (Association), to manage and administer the property.

---

[1]According to the Illinois Secretary of State's website, Franks Mechanical was involuntarily dissolved February 14, 2014.

[2]In paragraphs 6 and 7 of its second amended complaint, the condominium association indicated that after 2011, Museum Park "no longer owns any units in the Condominium for sale, no longer conducts business, no longer pays bills in the ordinary course of business and is otherwise insolvent."

¶ 7        The Association claimed that in June 2013, it was alerted to leaks in the building's hot water supply riser,[3] which prompted it to conduct further investigation of four pipe fan coil risers and branch lines in the building. The Association alleged that additional investigation revealed latent defects in the design, materials, and construction of the building's plumbing riser system. The Association also alleged that the defects required repairs, which Kenny refused to investigate and remediate. According to the Association, it incurred repair costs in excess of $1 million as a direct result of the defects.

¶ 8        On November 30, 2016, the Association, through its board of managers, filed a one-count complaint against Kenny for breach of implied warranty of habitability. The Association sought to recover the costs it incurred in repairing the defective hot water supply risers. On September 6, 2018, the Association filed an amended compliant adding Franks Mechanical as a defendant.

¶ 9        On December 28, 2018, the Illinois Supreme Court issued its opinion in *Sienna*, 2018 IL 122022. On January 4, 2019, Kenny moved, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), to dismiss the claim for breach of implied warranty of habitability. In its motion to dismiss, Kenny requested the circuit court apply the reasoning and analysis employed by the supreme court in *Sienna* to subcontractors—to general contractors.

¶ 10        The Association thereafter sought and obtained leave to amend its amended complaint to add a claim for breach of contract against Kenny. On May 31, 2019, the Association filed a second amended complaint against Kenny and Franks Mechanical. The Association pleaded two theories of liability and recovery against Kenny: breach of implied warranty of habitability (count I) and breach of contract (count III). Again, the Association sought to recover the costs it incurred in repairing the defective hot water supply risers.

¶ 11        Kenny moved to dismiss count I of the amended complaint pursuant to section 2-615 of the Code (*id.*). Kenny argued that count I for breach of implied warranty of habitability should be dismissed with prejudice based on the reasoning employed by the Illinois Supreme Court in *Sienna*. Kenny noted that the *Sienna* court clarified that contractual privity was a required element of a claim for breach of implied warranty of habitability. Kenny maintained that the Association could not pursue a claim against it for economic damages for breach of implied warranty of habitability, as no contractual privity existed between Kenny and the individual unit owners. For similar reasons, Kenny argued that count III for breach of contract should be dismissed with prejudice under section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)).

¶ 12        The circuit court conducted a three-day hearing on Kenny's motions to dismiss and ultimately entered an order granting the motions with prejudice. The circuit court applied the reasoning from *Sienna* and determined that the Association could not pursue a claim for breach of implied warranty of habitability against Kenny to recover economic damages, as there was no contractual privity between Kenny and the individual unit owners. For the same reasons, the court held that the Association could not pursue a breach of contract claim against Kenny.

¶ 13        The circuit court subsequently entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), finding that there was no just reason to delay enforcement or appeal

---

[3]"A plumbing riser is a vertical water supply line that rises from one story to the next in a multi-story building." *Riser Replacement*, Johns Plumbing, Inc., http://www.johnsplumbinginc.com/practice-areas.html (last visited July 28, 2021) [https://perma.cc/D9Y7-3M77].

of its order dismissing, with prejudice, counts I and III of the Association's second amended complaint against Kenny.[4] Rule 304(a) provides, in part, that if

> "multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Id.*

The Association filed a timely notice of appeal to this court. Accordingly, we have jurisdiction over this appeal pursuant to Rule 304(a) governing appeals from judgments that do not dispose of the entire proceeding.

¶ 14                                    II. ANALYSIS

¶ 15                              A. Standard of Review

¶ 16    We begin our analysis with a summary of the applicable standard of review. The circuit court dismissed the Association's claim for breach of implied warranty of habitability with prejudice pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) and dismissed the claim for breach of contract with prejudice pursuant to section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)).

¶ 17    A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). All well-pleaded facts are taken as true, and reasonable inferences are drawn in favor of the plaintiff. *Id.* The critical question in reviewing a section 2-615 motion is whether the allegations in the complaint when construed in the light most favorable to plaintiff are sufficient to state a cause of action upon which relief may be granted. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. A "cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall*, 222 Ill. 2d at 429.

¶ 18    In contrast, a section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Again, all well-pleaded facts are accepted as true, as well as any reasonable inferences that may arise from them; however, a court cannot accept as true mere conclusions, unsupported by specific facts. *Id.* Dismissals under either section 2-615 or 2-619 are reviewed *de novo*. *Id.* We now turn to the two counts before us, starting with count I for breach of implied warranty of habitability.

¶ 19                    B. Breach of Implied Warranty of Habitability

¶ 20    Historically, the purchaser of a newly constructed home took the property at his or her own risk, and if they failed to discover latent defects in the home's design or construction before the time of sale, the common law doctrines of *caveat emptor* and merger prevented them from maintaining an action against the builder for the defects. See *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 38-40 (1979).

---

[4]Kenny sought to voluntarily nonsuit its third-party complaint against Franks Mechanical, but instead the circuit court agreed to stay the matter and "put the rest of the case on the appeals calendar."

¶ 21    The merger doctrine is a common law doctrine that provides that the provisions in a contract for the sale of real property are merged into a subsequently executed deed. See *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 182 (1982). Under the doctrine of merger or merger by deed, unless the deed contains a reservation of rights provision, "all prior agreements between a buyer and a seller are merged in the deed upon its acceptance" and "[t]he deed supersedes the provisions of the real estate contract and becomes the only binding instrument between the parties." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). If reservations were not contained in the deed, then "merger would prevent relief to the aggrieved [buyer] after receipt of the deed." *Petersen*, 76 Ill. 2d at 38-39. "The merger doctrine evolved to protect the security of land titles [citation], and brings finality to real estate contracts." *Czarobski*, 227 Ill. 2d at 369-70. Traditionally, the merger doctrine operated to enforce the rule of *caveat emptor* in the sale of real property. *Petersen*, 76 Ill. 2d at 38-39.

¶ 22    Under the doctrine of *caveat emptor* (or "let the buyer beware"), a seller of real property is not liable to purchasers for damages resulting from defects in the design or condition of the property existing at the time of sale—absent express warranty, fraud, or misrepresentation. See, *e.g.*, *T&E Industries, Inc. v. Safety Light Corp.*, 587 A.2d 1249, 1257-58 (N.J. 1991) (under the doctrine of *caveat emptor*, seller of real property is not liable to purchaser for damages resulting from defects in the premises, absent fraud, concealment, or express warranty). The doctrine of *caveat emptor* is rooted in the notion that the seller and buyer possess similar skills and are engaged in an arm's length transaction. See *Bezin v. Ginsburg*, 59 Ill. App. 3d 429, 438 (1978).

¶ 23    "The implied warranty of habitability was created to avoid the harshness of *caveat emptor* and the doctrine of merger where the purchasers of new homes discover latent defects in their home." *Board of Managers of the Village Centre Condominium Ass'n, Inc. v. Wilmette Partners*, 198 Ill. 2d 132, 137 (2001); see also *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426, 430 (1997) (same). "To avoid the merger doctrine, the implied warranty has been treated as an independent undertaking to the covenant to convey and one that survives the delivery of the deed." William Jordan, *Architect May Not Be Held Liable for Breach of Implied Warranty of Habitability*, 40 Prof. Liability Rep. (West) No. 11, at NL3 (Nov. 2015); see also *Redarowicz*, 92 Ill. 2d at 182 ("To eliminate the effect of the doctrine of merger *** the implied warranty of habitability 'exists as an independent undertaking collateral to the covenant to convey.' " (quoting *Petersen*, 76 Ill. 2d at 41)). "The implied warranty arises with the execution of the contract and survives the delivery of the deed." *Petersen*, 76 Ill. 2d at 41.

¶ 24    "The purpose of the implied warranty of habitability is to protect homeowners from latent defects in their homes that affect the habitability of those residences." *Board of Managers of the 1120 Club Condominium Ass'n v. 1120 Club, LLC*, 2016 IL App (1st) 143849, ¶ 26 (citing *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999)). The implied warranty of habitability "is an implied covenant by the builder-vendor that the house which he contracts to build and to convey to the vendee is reasonably suitable for its intended use." *Petersen*, 76 Ill. 2d at 41. The implied warranty is limited to latent defects attributable to the builder's design or construction that interfere with the purchaser's legitimate expectation that the house he or she is purchasing will be reasonably suited for its intended use as a residence. *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 134 Ill. App. 3d 402, 405 (1985). Latent defects, as opposed to patent defects, are defects that could not have been discovered by the purchaser exercising

reasonable care on viewing the property. *Park v. Sohn*, 89 Ill. 2d 453, 464 (1982); *Overton v. Kingsbrooke Development, Inc.*, 338 Ill. App. 3d 321, 330 (2003).

¶ 25     *Petersen* was the first case from our supreme court to extend the implied warranty of habitability to the sale of a newly constructed home by a builder-vendor to a vendee for use as a residence. *Sienna*, 2018 IL 122022, ¶ 14; *Board of Managers of the Village Centre Condominium Ass'n.*, 198 Ill. 2d at 137. The rationale and policy considerations underlying the judicial extension of the implied warranty of habitability to the sale of new homes by a builder-vendor have been summarized as follows:

> "(1) the modern home buyer is unusually dependent upon the competency and honesty of the builder rather than on the buyer's own ability to discern latent defects, (2) the buyer is making the largest single investment of his or her life, and, (3) in fairness, the repair costs of defective construction should be borne by the builder-seller who created the latent defects." *Board of Managers of Park Point at Wheeling Condominium Ass'n v. Park Point at Wheeling, LLC*, 2015 IL App (1st) 123452, ¶ 8 (citing *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611, 616-17 (2010)).

¶ 26                                    1. Economic Loss Rule

¶ 27     In *Sienna*, our supreme court reiterated its holding in *Petersen* that the implied warranty of habitability arises out of contract law (see *Petersen*, 76 Ill. 2d at 41 ("[t]he implied warranty arises with the execution of the contract")) and determined that under the economic loss rule, which was adopted by our supreme court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 80-82 (1982), privity of contract is required to bring a claim for breach of implied warranty of habitability, overruling *Minton v. Richards Group of Chicago*, 116 Ill. App. 3d 852, 854 (1983), which held to the contrary. *Sienna*, 2018 IL 122022, ¶¶ 22-25. In Illinois, the economic loss rule precludes recovery in tort when a plaintiff brings a claim solely for economic damages unaccompanied by personal injury, property damage, intentional fraud, or misrepresentation. *Id.* ¶ 20; see also *Fattah v. Bim*, 2016 IL 119365, ¶ 24 (economic loss rule holds that a plaintiff may not recover for solely economic loss in tort).

¶ 28     The purpose of the economic loss rule is to preserve the distinction drawn between those claims that arise from common law theories of tort and strict liability on the one hand and those that are properly brought under principles of contract law on the other. *Sienna*, 2018 IL 122022, ¶ 21; *Moorman*, 91 Ill. 2d at 80-82. The economic loss rule is based on the recognition that contract law, rather than tort law, is better suited to provide remedies for pure economic losses arising out of commercial transactions. *Sienna*, 2018 IL 122022, ¶ 21. Our supreme court adopted the definition of "economic loss" as damages for inadequate value, costs of repair and replacement of defective products, consequential loss of profits without any claim of personal injury or damage to other property, as well as diminution in the value of the property due to failure to perform the general purposes for which it was manufactured and sold. *Moorman*, 91 Ill. 2d at 82. The court determined that these definitions were "consistent with the policy of warranty law to protect expectations of suitability and quality." *Id.*

¶ 29     An action for economic loss requires the plaintiff to be in contractual privity with the defendant. *Sienna*, 2018 IL 122022, ¶ 21; *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 306-10 (1986); *Bernot v. Primus Corp.*, 278 Ill. App. 3d 751, 754 (1996) (a viable action for economic loss requires plaintiff to be in contractual privity with defendant). In *Sienna*, our

supreme court determined that "[t]he loss that can be recovered under the implied warranty of habitability is for disappointed commercial expectation, *i.e.*, pure economic loss," and as such "the implied warranty of habitability [is] a creature of contract, not tort." *Sienna*, 2018 IL 122022, ¶ 30.

¶ 30    In *Sienna*, the condominium association filed a lawsuit on behalf of the individual unit owners against the developer, general contractor, architectural and engineering design firms, material suppliers, and several subcontractors. *Id.* ¶¶ 3-4. The lawsuit asserted a claim against the developer for breach of an express warranty and claims for breach of implied warranty of habitability against the developer and the rest of the defendants. *Id.* The condominium association alleged that at the time the developer marketed and sold the condominium units to the individual purchasers, the condominium building contained a number of latent defects that resulted in water infiltration and other conditions that rendered the individual units and common areas unfit for habitation. Before the lawsuit was filed, the developer and general contractor were declared bankrupt, but the condominium association was permitted to pursue claims against them to the extent of their available insurance coverage. *Id.* ¶ 5.

¶ 31    The subcontractors and material suppliers jointly moved to dismiss the counts directed at them, arguing that they were not subject to an implied warranty of habitability. *Id.* ¶ 6. The circuit court denied the motion to dismiss based on *Minton*, 116 Ill. App. 3d at 854-55, where the appellate court held that a purchaser of a newly constructed home, which contained latent defects caused by a subcontractor, may seek monetary damages from the subcontractor under an implied warranty of habitability where the purchaser had "no recourse to the builder-vendor" due to its dissolution and insolvency.

¶ 32    On appeal and in response to four certified questions from the circuit court, the appellate court affirmed the circuit court. *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2017 IL App (1st) 143364, ¶ 114. The appellate court held that the "insolvency" of the developer or general contractor, rather than the possibility of "recourse" against these entities, was the determinative factor as to whether a claim for breach of implied warranty of habitability may be asserted against a subcontractor. *Id.* ¶¶ 78-81. The appellate court determined that the purchaser of a new home who sustained loss due to latent defects caused by a subcontractor could pursue a claim against the subcontractor for breach of implied warranty of habitability when the builder-vendor is insolvent. *Id.* ¶ 85. The appellate court, relying on *Minton*, rejected the subcontractor-appellants' argument that where a homeowner had no contractual relationship with a subcontractor there could be no implied warranty of habitability. *Id.* ¶¶ 97-98. In *Minton*, the appellate court held that a subcontractor may be liable to a new home purchaser for the home's latent defects under a theory of implied warranty of habitability, even though the subcontractor was not in privity of contract with the homeowner. *Minton*, 116 Ill. App. 3d at 854.

¶ 33    The Illinois Supreme Court granted the subcontractor-appellants' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Mar. 15, 2016). *Sienna*, 2018 IL 122022, ¶ 10. On review, the supreme court observed that the questions certified by the circuit court rested on the challenged assumption that it was "appropriate to recognize a claim for breach of an implied warranty of habitability against the subcontractors of a newly constructed home, even though the subcontractors have no contractual relationship with the homeowner." *Id.* ¶ 13. The supreme court reasoned that before reaching the certified questions pertaining to insolvency and the availability of recourse, it was necessary to answer the threshold question

as to whether the lack of contractual privity between a homeowner and subcontractor precluded the homeowner from maintaining a claim against the subcontractor for breach of implied warranty of habitability in the first place. *Id.* As a result, the supreme court modified the questions certified by the circuit court by adding the following threshold inquiry: "May the purchaser of a newly constructed home assert a claim for breach of an implied warranty of habitability against a subcontractor who took part in the construction of the home, where the subcontractor had no contractual relationship with the purchaser?" *Id.*

¶ 34 The supreme court answered this threshold inquiry in the negative. The supreme court explained that the loss that can be recovered under the implied warranty of habitability is for disappointed commercial expectation, *i.e.*, pure economic loss, and as such, a claim for breach of implied warranty of habitability is a "creature of contract, not tort." *Id.* ¶ 30; see also *Redarowicz*, 92 Ill. 2d at 177 (to recover in negligence there must be a showing of harm beyond disappointed commercial expectations). Accordingly, the supreme court determined that the purchaser of a newly constructed condominium unit may not pursue a claim for breach of implied warranty of habitability against a subcontractor who had no contractual relationship with the purchaser. *Sienna*, 2018 IL 122022, ¶ 30. We find that the reasoning and analysis employed by our supreme court in *Sienna* to subcontractors applies equally as well to general contractors.

¶ 35 In the instant case, the Association seeks recovery for latent defects in the design, materials, and construction of the building's plumbing riser system. According to the Association, it incurred repair costs in excess of $1 million as a direct result of these defects. Thus, the costs to remedy these defects are solely economic in nature.

¶ 36 In cases such as this one, where the losses resulting from defective design and workmanship of a home are solely economic in nature, the economic loss rule bars a homeowner from seeking recovery under a theory of implied warranty of habitability unless there is privity of contract between the homeowner and the defendant. *Id.* ¶¶ 21-24.

¶ 37                                2. Privity of Contract

¶ 38 Privity of contract has been defined as "mutual *or successive* relationship to the same rights of property." (Emphasis in original.) *Collins Co. v. Carboline Co.*, 125 Ill. 2d 498, 511 (1988). The relationship may arise by operation of law, by descent, or by voluntary or involuntary transfer. *Id.* "Privity requires that the party suing has some contractual relationship with the one sued." *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1076 (1982). Privity also accompanies a valid assignment of the contract, as it puts the assignee into the shoes of the assignor. *Collins*, 125 Ill. 2d at 511-12. "Because the assignor was in privity with the opposite contracting party, so is the assignee." *Id.* at 512.

¶ 39 According to the Association, once Museum Park, the developer-vendor, was dissolved and became insolvent, the individual unit owners stepped into the shoes of Museum Park, which had a contract with Kenny, and therefore the unit owners were in privity of contract with Kenny. In other words, the individual unit owners are attempting to step into the shoes of Museum Park in order to establish privity of contract with Kenny.

¶ 40 In support of its position, the Association argues that the individual unit owners are in privity of contract with Kenny by virtue of paragraphs 10(a) and 10(e), which are contained in the sales contracts between the unit owners and Museum Park.

¶ 41        Paragraph 10(a) is an express agreement between the individual unit owners and Museum Park to construct the condominium pursuant to the sales contracts. Paragraph 10(a) provides in relevant part:

> "[Museum Park] agrees that it will construct the Premises substantially in accordance with the plans and specifications for the same which are on file in [Museum Park's] office, as amended from time to time (the 'Plans and Specifications'), the Rider hereto, if any, change orders entered into by Buyer and [Museum Park] subsequent to the date hereof, if any, and specifications, if any attached hereto."

¶ 42        Paragraph 10(e) permits rights of entry for the purpose of completing construction of common areas and units in the condominium. Paragraph 10(e) provides in relevant part:

> "For the purpose of completing the construction and sales promotion of the Units in the Condominium, [Museum Park] and its agents are hereby given full right and authority to place and maintain on, in and about the Condominium (excluding the Unit after closing) model units, sales and leasing offices, administrative offices, signs and lighting related to construction and sales promotion purposes, for such period of time, at such locations and in such forms as shall be determined by [Museum Park] in its sole and absolute discretion. [Museum Park], its employees, agents contractors and prospective Buyers are also hereby given, for construction and sales promotion purposes, the right of entry upon, ingress to, egress from and other use of the Condominium (excluding the Unit after closing), and the right to restrict and regulate access to the common areas, as defined in the Declaration, (the 'Common Area'), subject to Buyer's reasonable access to and from the Unit after closing, for the purposes of completing construction of the Common Areas and other Units in the Condominium."

¶ 43        We find that neither of these two paragraphs establish privity of contract between Kenny and the individual unit owners. Paragraphs 10(a) and 10(e) are provisions contained in the sales contracts between Museum Park and the individual unit owners. Kenny is not a party to these sales contracts. It was Museum Park, not Kenny, who agreed to construct the condominium building in accordance with the plans and specifications of contract, and it was Museum Park, not Kenny, who hired the subcontractor who constructed the risers.

¶ 44        In an attempt to establish contractual privity between Kenny and the individual unit owners, the Association contends that Museum Park delegated or assigned its obligations and liabilities under the contracts to Kenny, who in turn acquiesced to the terms of the contracts. The Association argues that when the individual unit owners purchased their respective condominium units from Museum Park, they then stood in the shoes of Museum Park and thus have contractual privity with Kenny, just like a subsequent purchaser of real property who stands in the shoes of the original purchaser and has privity of contract with the original seller. In support of this argument, the Association cites to *Redarowicz*, 92 Ill. 2d 171.

¶ 45        In *Redarowicz*, the supreme court held that the implied warranty of habitability could be extended to the second purchaser of a home who discovered latent defects in the construction of a chimney and adjoining brick wall, and in doing so, the court stated that "[p]rivity of contract is not required." *Id.* at 183. However, subsequent decisions of our supreme court have narrowed the somewhat broad language of *Redarowicz* and have determined that extending the implied warranty of habitability to subsequent purchasers of a home does nothing more than hold the builder-vendor to obligations arising from its original contract with the first purchaser and recognizes an implied assignment of the first purchaser's warranty rights, with the second

- 9 -

purchaser " 'merely stepping into the shoes of the first [purchaser].' " *Sienna*, 2018 IL 122022, ¶ 27 (quoting *Fattah*, 2016 IL 119365, ¶ 34).

¶ 46 "An assignment occurs when 'there is a transfer of some identifiable interest from the assignor to the assignee.' " (Internal quotation marks omitted.) *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 100 (2008) (quoting *Brandon Apparel Group v. Kirkland & Ellis*, 382 Ill. App. 3d 273, 283 (2008)). "Assignments are governed by contract law, and an assignment is subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration." *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387 (2004). "The 'creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived *** from the surrounding circumstances.' " *Id.* (quoting *Rivan Die Mold Corp. v. Stewart Warner Corp.*, 26 Ill. App. 3d 637, 642 (1975)). "Whether an assignment has occurred 'is dependent upon proof of intent to make an assignment and that intent must be manifested.' " *Id.* (quoting *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill. App. 3d 17, 30 (1998)).

¶ 47 In this case, there is no evidence in the record indicating that, after the individual sales contracts were executed by Museum Park and the new unit owners, Museum Park intended to assign or delegate its rights, obligations, and liabilities existing under the sale contracts to Kenny, either expressly or by implication, which would render Kenny an assignee.

¶ 48 In an alternative argument, the Association contends that privity of contract was established between Kenny and the individual unit owners through the property report and condominium declaration. A property report is not a contract (*Jones v. Eagle II*, 99 Ill. App. 3d 64, 70-71 (1981)) but rather is a disclosure document prepared by a developer that is required to be distributed to prospective purchasers pursuant to the Municipal Code of Chicago. See *Seth v. Aqua at Lakeshore East, LLC*, 2012 IL App (1st) 120438, ¶ 5 n.1; *Johnson v. Levy Organization Development Co.*, 789 F.2d 601, 607 (7th Cir. 1986).

¶ 49 Condominium declarations contain "the property's legal description, defines the units and common elements, provides the percentage of ownership interests, establishes the rights and obligations of owners, and contains restrictions on the use of the property." *Board of Directors of 175 East Delaware Place Homeowners Ass'n*, 287 Ill. App. 3d at 889-90. "Condominium declarations are covenants running with the land." *Siena at Old Orchard Condominium Ass'n v. Siena at Old Orchard, L.L.C.*, 2018 IL App (1st) 182133, ¶ 21. " 'A covenant is a contract to which the ordinary rules of contract construction apply.' " *Id.* (quoting *Chiurato v. Dayton Estates Dam & Water Co.*, 2017 IL App (3d) 160102, ¶ 28). " 'In interpreting a covenant, the goal of the court is to give effect to the actual intent of the parties when the covenant was made.' " *Id.* (quoting *Neufairfield Homeowners Ass'n v. Wagner*, 2015 IL App (3d) 140775, ¶ 16).

¶ 50 Here, the Association maintains that privity of contract was established between Kenny and the individual unit owners pursuant to the "rights of entry" provision in paragraph 10(e) of the sales contracts and in the "blanket easement" found in section 5(b)(2) of the condominium declaration that granted Museum Park and its "agents, associates, employees, contractors, subcontractors, successors and assigns" access to the land where the worksite was

- 10 -

located for the purpose of constructing the condominium.[5] The Association contends that the individual unit owners and Kenny exchanged "[v]aluable consideration" in the form of Kenny's agreement to construct the condominium pursuant to its rights of entry and the unit owners' agreement to provide that entry, and therefore, privity of contract existed between Kenny and the individual unit owners.

¶ 51 The Association cites no authority to support its proposition that a condominium declaration, which grants a blanket easement in favor of a builder-vendor for the purpose of constructing a condominium building, establishes contractual privity between the builder-vendor's general contractor and the individual unit owners, and we have found no such authority. Accordingly, the Association has forfeited this argument for purposes of appeal by failing to cite any supporting authority. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (failure to support argument with citation to authority forfeits argument); *International Union of Operating Engineers Local 965 v. Illinois Labor Relations Board, State Panel*, 2015 IL App (4th) 140352, ¶ 20 ("a party forfeits review of an issue on appeal by failing to support its argument with citation to authorities"). Forfeiture aside, we find that the Association's argument lacks merit, given the purposes for which the blanket easement was created and the evidence showing that Kenny was not a party to the condominium declaration and moreover was not a party to or signatory on the sales contracts entered into by Museum Park and the individual unit owners.

¶ 52 The Association acknowledges that Kenny did not sign the sales contracts, but nonetheless argues that this is "not dispositive" as to whether Kenny was a party to the contracts, suggesting that Kenny's conduct indicated it agreed to be a party to the contracts. We disagree.

¶ 53 The cases that the Association cites in support of its proposition do not apply here, as they involve factual circumstances absent in this case, namely, one party signing a contract either on behalf of another party or a separate entity. See *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.*, 65 Ill. App. 3d 907, 912-13 (1978) (plaintiff signed agreement on behalf of corporation); *Lawcock v. United States Trotting Ass'n*, 55 Ill. App. 2d 211, 215 (1965) (issue as to whether agent who signed agreement had actual, apparent, or implied authority to bind defendant to the agreement); *M&J Diesel Locomotive Filter Corp. v. Nettleton*, 56 Ill. App. 2d 146, 152 (1965) (defendant signed lease on behalf of corporation); *Midwest Grocery Co. v. Danno*, 29 Ill. App. 2d 118, 124 (1961) (genuine issue of material fact as to whether defendant signed membership agreement on behalf of his brother); *Freeport Journal-Standard Publishing Co. v. Frederic W. Ziv Co.*, 345 Ill. App. 337, 347 (1952) (employee signed lease on behalf of his employer-company). In this case, there was no privity of contract between Kenny and the individual unit owners, and therefore the Association could not pursue a claim for breach of implied warranty of habitability.

---

[5]At the basic level, an easement is a nonpossessory right or privilege in the real estate of another that entitles the holder of the easement to use the burdened property for some specific purpose. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 29. A blanket easement, in contrast to a specific easement, is formed when the instrument creating the easement does not delineate specific dimensions of the easement for ingress and egress; a specific easement is formed when the instrument creating the easement expressly describes the width, length, and location of the easement for ingress and egress. *Brown v. Conocophillips Pipeline Co.*, 271 P.3d 1269, 1274-75 (Kan. Ct. App. 2012).

¶ 54                            3. Retroactive Application of *Sienna*

¶ 55        The Association also contends that assuming, *arguendo*, the supreme court's decision in *Sienna* applies to the Association's claim for breach of the implied warranty of habitability, the decision should not be applied retroactively in the present case. The Association maintains that the *Sienna* decision overruled clear past precedent on which the individual unit owners relied, and therefore the decision should only be given prospective effect and should not be used as retroactive precedent to support the dismissal of the Association's claim for breach of implied warranty of habitability against Kenny. The Association argues that the circuit court erred in giving the *Sienna* decision such retroactive effect. Again, we must disagree.

¶ 56        Our supreme court has adopted the following three factors outlined by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971), for determining when a decision in a civil case should only be given prospective application. See *John Carey Oil Co. v. W.C.P. Investments*, 126 Ill. 2d 139, 148-49 (1988); *Board of Commissioners of the Wood Dale Public Library District v. County of Du Page*, 103 Ill. 2d 422, 426-27 (1984).

> "The three factors to be considered are: (1) whether the decision to be applied nonretroactively established a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether, given the purpose and history of the new rule, its operation will be retarded or promoted by prospective application; and (3) whether substantial inequitable results would be produced if the former decision is applied retroactively." *Tosado v. Miller*, 188 Ill. 2d 186, 197 (1999) (citing *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 92-94 (1997)).

¶ 57        Although all of the *Chevron* factors must be considered (*John Carey Oil Co.*, 126 Ill. 2d at 149), we need look no further than the first factor enunciated in *Chevron*: "whether the decision to be applied nonretroactively established a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Tosado*, 188 Ill. 2d at 197. "This initial consideration is a 'threshold requirement' for prospective application of a new decision." *Id.* (quoting *Aleckson*, 176 Ill. 2d at 88). Applying the first *Chevron* factor, we believe that retroactive application of our supreme court's decision in *Sienna* is appropriate.

¶ 58        The Illinois Supreme Court's decision in *Sienna* did not establish a new principle of law. Rather, the decision clarified that a claim for breach of implied warranty of habitability requires privity of contract to recover purely economic losses resulting from latent defects in the design, materials, and construction of a building. *Sienna*, 2018 IL 122022, ¶ 30. The *Sienna* decision was foreshadowed by earlier decisions of our supreme court applying the economic loss rule to building construction cases involving latent defects. See, *e.g.*, *Fattah*, 2016 IL 119365, ¶ 24 (economic loss rule holds that a plaintiff may not recover for solely economic loss in tort); *Redarowicz*, 92 Ill. 2d at 176-78 (recognizing and applying the economic loss rule). In *Sienna*, our supreme court reiterated the holding in *Petersen* that the implied warranty of habitability arises out of contract law and determined that, under the economic loss rule, privity of contract is required to bring a claim for breach of implied warranty of habitability. *Sienna*, 2018 IL 122022, ¶¶ 15-17, 30. *Sienna* did not establish a new principle of law, and therefore the Association has not met the threshold requirement for only prospective application of *Sienna*.

¶ 59        For the same reasons that the Association failed to establish that there was contractual privity between the individual unit owners and Kenny, it also failed to state a cause of action

- 12 -

against Kenny for breach of contract.

¶ 60                                  C. Breach of Contract

¶ 61    "It is well settled in Illinois that, absent privity of contract, a purchaser or owner of real property has no cause of action against a defendant for breach of contract unless he can demonstrate that the contractual obligations and duties were undertaken for his direct benefit." *Waterford Condominium Ass'n v. Dunbar Corp.*, 104 Ill. App. 3d 371, 373 (1982).

> "It is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of the building in that they will be users of it. The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *Id.*

¶ 62    In this case, there was no language in either the sales contracts between Museum Park and the individual unit owners, or in the contract between Museum Park and Kenny, that provided that Kenny was acting for the direct benefit of the individual unit owners, "either individually or as a class." *Id.* at 374. Because the Association has failed to establish that there was contractual privity between the individual unit owners and Kenny, the Association cannot pursue a breach of contract claim against Kenny.

¶ 63                                     III. CONCLUSION

¶ 64    Consistent with the reasoning and analysis employed by our supreme court in *Sienna*, we hold that the purchaser of a newly constructed condominium unit may not pursue a claim for breach of implied warranty of habitability against a general contractor where there was no privity of contract between the general contractor and the purchaser. In the instant case, there was no privity of contract between Kenny and the individual unit owners, and therefore the Association could not pursue a claim for breach of implied warranty of habitability. Accordingly, the circuit court did not err in granting Kenny's section 2-615 motion to dismiss the claim for breach of implied warranty of habitability.

¶ 65    We further hold that given the Association's failure to establish contractual privity between the individual unit owners and Kenny, the Association cannot maintain its breach of contract claim. Accordingly, the circuit court did not err in granting Kenny's section 2-619(a)(9) motion to dismiss the claim for breach of contract.

¶ 66    For the foregoing reasons, the judgments of the circuit court are affirmed.

¶ 67    Affirmed.