# Illinois Official Reports

## Supreme Court

---

### *Fattah v. Bim*, 2016 IL 119365

---

| | |
|---|---|
| Caption in Supreme Court: | JOHN FATTAH, Appellee, v. MIREK BIM *et al.*, Appellants. |
| Docket No. | 119365 |
| Filed | May 19, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County; the Hon. Sanjay T. Tailor, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Shawn M. Doorhy and Trina K. Taylor, of Faegre Baker Daniels LLP, of Chicago, for appellants.<br><br>Daniel J. Voelker and Alexander N. Loftus, of Voelker Litigation Group, of Chicago, for appellee.<br><br>John P. Cooney and Jeffrey D. Corso, of Cooney Corso & Moynihan, LLC, of Downers Grove, for *amici curiae* Home Builders Association of Illinois *et al*. |

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.


**OPINION**

¶ 1    In *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979), this court held that, in a contract for sale from a builder-vendor to the first purchaser of a newly constructed house, there is an implied warranty that the house will be free from latent defects that unreasonably interfere with its intended use. We also held that this "implied warranty of habitability" may be waived by the purchaser if certain conditions are met. *Id.* at 43. Three years after *Petersen*, in *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171 (1982), we held, in a case where there was no waiver of the implied warranty of habitability by the first purchaser of a house, that the warranty should be extended to a second purchaser of the house.

¶ 2    In this case, we address a question left unanswered by *Redarowicz*: May the implied warranty of habitability be extended to a second purchaser of a house when a valid, bargained-for waiver of the warranty was executed between the builder-vendor and the first purchaser? For the reasons that follow, we conclude that it may not.


¶ 3                                   BACKGROUND

¶ 4    Defendant Mirek Bim was the president and owner of Masterklad, Inc., a corporation engaged in the business of building houses.[1] In 2005, Masterklad began construction of a single-family house in Glenview, Illinois. When completed, the house included a patio made of paver bricks that extended off the rear of the house. Because the ground underneath the patio sloped down as it moved away from the house, dirt and gravel were placed underneath the patio to support the bricks and make them level with the rear entrance to the house. A retaining wall was built around the patio to contain the fill.

¶ 5    In 2007, the house was sold by Masterklad to a woman named Beth Lubeck for $1,710,000. Attached to the real estate sales contract was a "Waiver and Disclaimer of Implied Warranty of Habitability." In this document, Lubeck "knowingly, voluntarily, fully and forever," waived the implied warranty of habitability in exchange for an express warranty provided by Masterklad. The express warranty itself is not included in the record on appeal, but other filings of record indicate that this warranty had a term of one year. There is no dispute between the parties that Lubeck's waiver of the implied warranty of habitability in exchange for an express, one-year warranty was valid and enforceable, and there is no dispute that Masterklad honored the terms of the express warranty while it was in effect.

¶ 6    In May 2010, Lubeck sold the house to the plaintiff, John Fattah, for $1,050,000. Attached to the real estate sales contract was a rider captioned, " 'As Is' Addendum." This document stated that the house was being sold to plaintiff "as is" and that the seller, Lubeck, made no

---

[1]Defendant Alina Bim is the wife of Mirek Bim. Her relation to Masterklad is not clear from the record.

representations or warranty to plaintiff regarding the condition of the house. The document also indicated that plaintiff had been advised to seek appropriate counsel regarding the risks of buying property "as is." Closing on the sale of the house occurred in November 2010.

¶ 7	In February 2011, parts of the retaining wall around the rear patio of the house gave way, and, as a result, a portion of the patio collapsed. Five months later, in July 2011, plaintiff filed a one-count complaint against defendants, in their personal capacities, in the circuit court of Cook County. The complaint alleged that an implied warranty of habitability extended from defendants to plaintiffs and that defendants had breached this warranty by constructing a patio retaining wall that contained latent defects. The complaint sought damages in excess of $86,000. Shortly after plaintiff filed his complaint, Masterklad was voluntarily dissolved.

¶ 8	Defendants initially appeared in the circuit court *pro se* and provided the court with an address for service. After filing an answer to plaintiff's complaint, defendants hired an attorney who prepared a motion for summary judgment. When that motion was denied, counsel withdrew. Defendants then filed a substitute appearance *pro se* with a new, updated address for service.

¶ 9	Following a bench trial, the circuit court found, on the basis of the testimony presented, that the patio wall had given way due to latent defects in its construction. Nevertheless, the circuit court held that plaintiff could not recover. The court emphasized that Masterklad had executed a valid, enforceable waiver of the implied warranty of habitability with Lubeck. Noting that no "builder or developer can predict who will buy" a newly constructed house after its first purchaser, the circuit court determined that imposing liability on defendants in this case would "frustrate the policy favoring the enforcement of knowing waivers" of the implied warranty of habitability. The court therefore denied plaintiff relief.

¶ 10	Plaintiff filed notices of appeal in the circuit and appellate courts. The parties dispute whether proof of service on defendants was properly filed or whether defendants were actually served with any notice of appeal. Thereafter, various other filings by plaintiff in the appellate court were erroneously sent to defendants' old address rather than the updated service address which they had provided. Defendants did not file a brief in the appellate court or otherwise appear.

¶ 11	In the absence of briefing from defendants, the appellate court proceeded under the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), and reversed the judgment of the circuit court. 2015 IL App (1st) 140171. Citing to *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171 (1982), the appellate court stated that the implied warranty of habitability extends from a builder-vendor to a second purchaser of a house, such as plaintiff. The appellate court then concluded that Lubeck's waiver of the implied warranty of habitability did not preclude plaintiff's claim against defendants and, further, that the "as is" rider in plaintiff's contract with Lubeck did not affect any rights plaintiff had against defendants. The appellate court therefore held that plaintiff could proceed on his claim for breach of the implied warranty of habitability against defendants. The appellate court remanded the cause back to the circuit court to determine whether the latent defects in the patio wall identified by the circuit court interfered with the reasonably intended use of plaintiff's house and whether those defects had manifested within a reasonable period of time so as to come within the scope of the implied warranty of habitability. 2015 IL App (1st) 140171, ¶ 41.

¶ 12        We granted defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 13                                    ANALYSIS

¶ 14        Defendants raise three arguments before this court: (1) the appellate court erred in holding that plaintiff had a cause of action for breach of an implied warranty of habitability; (2) the appellate court erred in holding defendants personally liable to plaintiff when Masterklad, a corporate entity, was the builder of plaintiff's house; (3) because of service problems in the appellate court, defendants had no meaningful opportunity to participate in the appellate court proceedings, and, hence, their due process rights were violated.[2] We begin with defendants' first argument.

¶ 15        The appellate court's reasoning with respect to the implied warranty of habitability was essentially in two steps. First, relying on *Redarowicz*, the court assumed that the implied warranty of habitability extends from a builder-vendor to a second purchaser of a house as a matter of course. 2015 IL App (1st) 140171, ¶ 23. Plaintiff was a second purchaser of the house at issue, and, therefore, according to the court, the warranty was applicable to him.

¶ 16        Second, the appellate court concluded that plaintiff never waived any implied warranty of habitability. As the appellate court observed, plaintiff never had any written or verbal agreement with defendants to waive the warranty, and the "as is" rider in plaintiff's contract with Lubeck had no bearing on plaintiff's rights with respect to defendants. *Id.* ¶¶ 28-38. Accordingly, the appellate court concluded that plaintiff's complaint for breach of the implied warranty of habitability could proceed. We disagree.

¶ 17        The appellate court erred in the first step of its analysis by assuming, without discussion, that the implied warranty of habitability extends automatically to all second purchasers of a house. The implied warranty was extended to a second purchaser in *Redarowicz* under a particular set of facts, where there had been no waiver of the warranty by the first purchaser. It is not a given that the implied warranty may be extended to a second purchaser when a waiver of the warranty exists.

¶ 18        Thus, the initial question we must address in this case is whether the implied warranty of habitability may be extended to plaintiff in the first place, given that Lubeck executed a valid, bargained-for waiver of the warranty. To answer that question, we need to review the reasons behind the implied warranty of habitability and why, in *Redarowicz*, we concluded the warranty could be extended to a second purchaser.

¶ 19        In *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31 (1979), this court held that an implied warranty of habitability protects the initial purchaser of a new house against latent defects that would render the house not reasonably fit for its intended use. Recognition of this warranty was justified, the court explained, by the significant changes in the construction methods and marketing of new houses that had arisen in the modern era. The court noted that many "new houses are, in a sense, now mass produced" and that the buyer often purchases the house "from a model home or from predrawn plans." *Id.* at 40. The court further observed that the buyer of a newly constructed house "has little or no opportunity to inspect" and "must rely upon the integrity and the skill of the builder-vendor." *Id.* The court concluded that the "vendee

_____

[2]At oral argument counsel for plaintiff acknowledged that there were service irregularities in this case. He apologized for the errors but contended that they did not warrant granting defendants relief.

has a right to expect to receive that for which he has bargained and that which the builder-vendor has agreed to construct and convey to him, that is, a house that is reasonably fit for use as a residence." *Id.* Accordingly, the court determined that recognition of an implied warranty of habitability was appropriate.

¶ 20    *Petersen* stressed that the implied warranty of habitability is based in the contract of sale and arises "by virtue of the execution of the agreement between the vendor and the vendee." *Id.* at 41. It exists, the court stated, "as an independent undertaking collateral to the covenant to convey" that relaxes the rule of *caveat emptor* and the doctrine of merger and "is implied as a separate covenant between the builder-vendor and the vendee because of the unusual dependent relationship of the vendee to the vendor." *Id.* It is, in short, "an implied covenant by the builder-vendor that the house which he contracts to build and to convey to the vendee is reasonably suited for its intended use." *Id.*

¶ 21    In addition to recognizing the implied warranty of habitability, *Petersen* held that the warranty may be waived and that such a waiver would not be against public policy. *Id.* at 43. The court also determined, however, that the language of any waiver provision will be strictly construed against the builder-vendor and that, to be valid, the waiver must be a conspicuous provision that fully discloses its consequences and establishes that the waiver was in fact the agreement reached by the parties. *Id.* See also *Board of Managers of the Village Centre Condominium Ass'n v. Wilmette Partners*, 198 Ill. 2d 132 (2001) (to be valid, a waiver of the implied warranty of habitability must refer to the warranty by name).

¶ 22    In *Redarowicz*, this court was confronted with the issue of whether the implied warranty of habitability could be extended to a second purchaser of a house. Courts addressing this issue have reached differing results. Some courts have concluded that, where the implied warranty is deemed to arise out of a contract of sale, it cannot be extended to a second purchaser. These courts have reasoned that, because there is no sales agreement between the builder-vendor and the second purchaser and hence no privity of contract, there can be no implied warranty. See, *e.g.*, *Long Trail House Condominium Ass'n v. Engelberth Construction, Inc.*, 2012 VT 80, ¶ 31, 59 A.3d 752 ("Our case law plainly contemplates the existence of contractual privity before a breach of implied warranty claim can be raised."); *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 57, 221 P.3d 234 ("Privity of contract is required to bring a claim for breach of the implied warranty."). One court, in declining to extend the implied warranty to a second purchaser, determined that, while there were reasonable arguments in favor of extending the warranty, those arguments were "predominately grounded in policy considerations" outside the realm of contract law and thus required "judgments reserved to the legislature." *Conway v. The Cutler Group, Inc.*, 99 A.3d 67, 72 (Pa. 2014).

¶ 23    Other courts, however, including this court in *Redarowicz*, have held that the implied warranty of habitability may be extended to a second purchaser. In *Redarowicz*, the defendant builder completed the construction of a house for its original owners in early 1976. Approximately one year later, the house was sold to the plaintiff. Shortly thereafter, the plaintiff discovered defects in the exterior chimney and brick wall. He then filed a complaint against the builder-vendor, alleging liability under both tort theories and the implied warranty of habitability. The complaint was dismissed by the circuit court, and, in relevant part, that judgment was affirmed on appeal. *Redarowicz*, 92 Ill. 2d at 174-76.

¶ 24    This court began its analysis by first holding that, under the economic loss rule, the builder-vendor could not be subject to liability in tort. The economic loss rule, which was adopted by this court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982), holds that a plaintiff may not recover for solely economic loss in tort. As *Redarowicz* noted, a buyer's desire to enjoy the benefit of his bargain is protected by the law of contracts and is "not an interest that tort law traditionally protects." *Redarowicz*, 92 Ill. 2d at 177. Thus, to recover in tort, there must be a showing of harm "above and beyond disappointed expectations." *Id.* See also, *e.g.*, *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 870 (1986) (the failure of a purchaser to receive the benefit of its bargain is "traditionally the core concern of contract law"). Applying the economic loss rule, *Redarowicz* held that the plaintiff was seeking only damages for the cost of repair and replacement of the damaged chimney and adjoining structures, and, while the damage to these structures meant that he received less than what he bargained for when he purchased the house, the complained-of economic losses were not recoverable in tort. *Redarowicz*, 92 Ill. 2d at 178.

¶ 25    With respect to the implied warranty of habitability, however, this court concluded that the plaintiff's complaint could proceed. In so holding, *Redarowicz* emphasized the short time period—approximately one year—between the completion of the construction of the house and the time the plaintiff, the second purchaser, bought it. *Id.* at 183. This short time period was significant because it meant that the plaintiff occupied the house during a time when the original owners would still have been covered by the implied warranty of habitability if they had remained in the house. That being the case, allowing the plaintiff to pursue a cause of action for breach of the implied warranty would not alter the burdens or risks that were already placed on the builder-vendor and, importantly, would not alter the builder-vendor's reasonable expectations. As this court explained, we "are an increasingly mobile people," and, thus, "a builder-vendor should know that a house he builds might be resold within a relatively short period of time and should not expect that the warranty will be limited by the number of days that the original owner chooses to hold onto the property." *Id.* at 185. Concluding that the "compelling public policies underlying the implied warranty of habitability should not be frustrated because of the short intervening ownership of the first purchaser" (*id.* at 183), this court held that contractual privity was not required to sustain a cause of action for breach of the implied warranty of habitability and that the warranty could be extended to the plaintiff under the facts presented.

¶ 26    *Redarowicz* stands for the proposition that it is fair to require a builder-vendor to pay a second purchaser of a house for the cost of repairing latent defects—even in the absence of any tort liability or contractual obligation to the second purchaser—so long as the second purchaser is seeking only to recover for damages that would have been available to the first purchaser. In such a case, it makes no difference from the builder-vendor's perspective whether the plaintiff is a first or second purchaser; the builder-vendor's burdens are not changed, and it is held to nothing more than those obligations that arose from its original contract with the first purchaser.

¶ 27    Notably, other courts have similarly concluded that it is reasonable to extend the implied warranty of habitability to a second purchaser when doing so does not alter the burdens already placed on the builder-vendor. See, *e.g.*, *Speight v. Walters Development Co.*, 744 N.W.2d 108, 114 (Iowa 2008) (the "builder-vendor's risk is not increased by allowing subsequent purchasers to recover for the same latent defects for which an original purchaser could

recover"); *Lempke v. Dagenais*, 547 A.2d 290, 295 (N.H. 1988) ("The builder already owes a duty to construct the home in a workmanlike manner. [Citation.] And extension to a subsequent purchaser, within a reasonable time, will not change this basic obligation." (Internal quotation marks omitted.)); *Keyes v. Guy Bailey Homes, Inc.*, 439 So. 2d 670, 673 (Miss. 1983) (because a builder-vendor "already owes a duty to construct the home in a workmanlike manner," extension of liability to a second purchaser will require "no greater effort [by] *** the builder to protect himself"); *Nichols v. R.R. Beaufort & Associates*, 727 A.2d 174, 180 (R.I. 1999) ("allowing subsequent owners to maintain a similar cause of action *** will not drastically enlarge this basic obligation of the home builder"). See also William K. Jones, *Economic Losses Caused by Construction Deficiencies: The Competing Regimes of Contract and Tort*, 59 U. Cin. L. Rev. 1051, 1081 (1991) ("Absent express language to the contrary, courts should assume that a sale of property is a comprehensive transaction and that the buyer obtains from the seller all rights possessed by the seller. *** [A]nd, since the assignee obtains only the rights of the assignor, the obligations of the builder are not enlarged by assignment.").

¶ 28    In this case, however, plaintiff is not simply seeking to recover those damages that would have been available to Lubeck, the first purchaser of the house, under the implied warranty of habitability. Instead, because Lubeck waived the implied warranty, plaintiff is seeking to recover more than what Lubeck would have been entitled to. Extending the implied warranty in these circumstances would significantly alter the burdens and expectations of defendants and would be inequitable.

¶ 29    A builder-vendor offers the purchaser of a new house a bargained-for waiver of the implied warranty of habitability in order to obtain a date certain on which the builder-vendor's exposure to financial risk relating to the house will end. Obtaining this certainty, however, comes at a cost. The builder-vendor must either offer the purchaser a reduction in the price of the house or, as in this case, some other consideration, such as an express warranty, in exchange for the waiver.

¶ 30    If the implied warranty is extended to a second purchaser even in the face of a valid waiver, the financial certainty, which the builder-vendor bargained for and assumed it had obtained, is lost. The builder-vendor has no means of knowing when the house might be sold by the first purchaser or to whom and, thus, no way of knowing when, or if, liability for latent defects in the construction of the house will reappear. Thus, in this case, extending the implied warranty of habitability to plaintiff would mean that defendants paid the price to obtain the waiver of the implied warranty from Lubeck, by providing and performing under an express warranty, but face liability anyway. This is unreasonable.

¶ 31    Moreover, because a waiver of the implied warranty of habitability is effectively meaningless if liability may be revived at any time the house is sold, we think it fair to say that allowing the implied warranty to extend to second purchasers under the facts of this case would ensure that no builder-vendor would ever enter into waiver agreements in the future. A practice we expressly authorized in *Petersen* and that has been utilized in the housing industry for almost 40 years would thus be eliminated.

¶ 32    Other reasons also counsel against extending the implied warranty of habitability to a second purchaser when there has been a valid waiver. For example, assume a husband and wife purchase a new house in the wife's name and, in exchange for the builder-vendor lowering the

purchase price of the house, the wife agrees to waive the implied warranty of habitability. The day after the sale closes, the wife transfers ownership of the house to the husband, thereby reviving the implied warranty. The couple would receive the benefits of both the lower price of the house and the implied warranty of habitability.

¶ 33 In addition, unlike a first purchaser, who often faces a "take it or leave it" decision when buying from a model home or predrawn plans, a second purchaser is in a much stronger position to negotiate with the seller for a warranty, to inquire about whether the implied warranty has been waived, or to get a reduction in purchase price to reflect the risk of latent defects. In this case, however, plaintiff knowingly chose not to do these things but, instead, to purchase the house from Lubeck "as is."

¶ 34 Finally, it is important to again note that, under Illinois law, a second purchaser of a house may receive the benefit of an implied warranty of habitability that arises out of a sales contract between the first purchaser and the builder-vendor—a contract to which the second purchaser was not a party—because he is merely stepping into the shoes of the first purchaser. Along with that benefit, however, necessarily comes the flip side of the coin: if there is valid, bargained-for waiver by the first purchaser, the implied warranty cannot fairly be extended to the second purchaser.

¶ 35 We hold that the implied warranty of habitability may not be extended to a second purchaser of a house when a valid, bargained-for waiver of the warranty has been executed between the builder-vendor and the first purchaser. The appellate court therefore erred in holding that plaintiff could pursue his claim for breach of an implied warranty against defendants. Because we have granted defendants relief on this basis, we need not address their remaining arguments.

¶ 36                                                        CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court in favor of defendants is affirmed.

¶ 38 Appellate court judgment reversed.

¶ 39 Circuit court judgment affirmed.