2021 IL App (1st) 200594

THIRD DIVISION
December 29, 2021

No. 1-20-0594

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| 1541 NORTH BOSWORTH CONDOMINIUM ASSOCIATION, an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | 16 L 9990 |
| HANNA ARCHITECTS, INC., an Illinois Corporation; and JOHN C. HANNA, an Individual, | ) ) ) ) | Honorable Diane M. Shelley, Judge Presiding |
| Defendants-Appellants. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The City of Chicago maintains a robust set of ordinances setting the standards for construction and maintenance of buildings, collectively called the Chicago Building Code. For nearly all construction or modification, the builder must apply for a permit. Under the standard procedure, the party submits plans, which the Department of Buildings (Department) reviews for compliance with the Building Code.

¶ 2    But there is an alternative route. By separate ordinance, the city authorized the Department to create a "Self-Certification Permit Program" (SCPP). Under the SCPP, "qualified architects and structural engineers [are allowed] to self-certify that plans filed with the

department do not contain any false information and are in compliance with the requirements of the Chicago Building Code." This certification allows the builder to bypass the otherwise mandatory Department review before obtaining a building permit.

¶ 3     Defendants John C. Hanna (Hanna) and his company, Hanna Architects, Inc. (collectively, the Hanna defendants) designed and self-certified plans for construction of a 3-unit residential condominium at 1541 North Bosworth Avenue in Chicago (the Building). Utilizing these certified plans, the builder obtained a permit through the SCPP. After designing and certification, the Hanna defendants had no more involvement with the Building's construction.

¶ 4     Five years after the Building was constructed, a Halloween windstorm exposed a severe defect in its design: it lacked a lateral structural support system to withstand wind loads (as required by the Building Code). The homeowners, through their governing body, plaintiff 1541 North Bosworth Condominium Association, filed suit against various parties, including the developer of the property, the general contractor, the marketer/seller of the property, and the Hanna defendants.

¶ 5     All but one claim against the Hanna defendants were dismissed during motion practice and are not at issue on appeal. But the circuit court found that the Association had an implied private cause of action based on the Hanna defendants' SCPP self-certification. After a bench trial under this theory of an implied cause of action and only this theory, the circuit court awarded the Association just over $1.5 million in damages.

¶ 6     Though the case ended with a judgment after trial, the Hanna defendants' principal argument on appeal is a purely legal one: whether the court correctly found an implied right of action under a city ordinance and the SCPP program that was created pursuant to that ordinance.

2

If the court erred, and no such implied right of action exists, plaintiff has no basis for judgment, and we must reverse.

¶ 7    The Hanna defendants raise several arguments on this point. First, they simply claim that neither the relevant city ordinance nor the Department's SCPP program implied such a private right of action. Second, they argue that the city lacked the constitutional authority to pass an ordinance that can serve as the basis of an implied cause of action. Finally, they argue that implying a cause of action here would effectively "eviscerate" the economic-loss rule, which bars tort actions seeking purely economic damages, a doctrine our supreme court has applied to suits against architects like defendants here.

¶ 8    We agree with the Hanna defendants that neither the city's ordinance nor the SCPP program itself implies a cause of action against the Hanna defendants. We thus reverse the circuit court's judgment.

¶ 9                                    BACKGROUND

¶ 10    Generally speaking, the City of Chicago has a standard review process for constructing buildings in Chicago that requires permit applicants to submit their construction designs, drawings and specification for review with the Department. The plans are then reviewed by various design professionals with the city, including a structural engineer, to make sure they comply with the Building Code.

¶ 11    At all relevant times, however, Chapter 13-32-031 of the Chicago Municipal Code authorized the Commissioner of Buildings to create a program "authorizing qualified licensed design professionals to self-certify plans." Chicago Municipal Code § 13-32-031 (amended Sept. 6, 2017). The Department thus created the SCPP to allow qualified professionals to self-certify that plans filed with the Department are "true and accurate" and comply with the Building Code.

3

The SCPP, in other words, provided a bypass from the traditional, mandatory independent review of plans before issuing a permit.

¶ 12    The Department promulgated administrative rules to implement the SCPP that first became effective in October 2009. But the events giving rise to this lawsuit pre-date those rules by over a year. During the relevant time period—mid-2008—the Department had yet to promulgate any rules to implement the SCPP.

¶ 13    Despite the fact that it had not yet promulgated rules, it is undisputed that the Department began implementing the SCPP at least as early as 2008—if in no other way, by requiring that the self-certifying licensed professional execute a "Professional of Record Self-Certification Statement." It is the signing of this statement by the Hanna defendants that forms the backbone of this action.

¶ 14    The Building at issue here, located at 1541 North Bosworth Avenue in Chicago, was developed by a single-property LLC, which hired the Hanna defendants to design it. Hanna's design was a unique, open, staggered-floor plan that was similar to another of his buildings in Chicago. The developer wanted to get the Building to market quickly and requested the Hanna defendants submit the plans through the SCPP. The Hanna defendants complied.

¶ 15    The self-certification statements signed by the Hanna defendants and the developer were forms provided by the Department (which, at the time the forms were drafted, still went by the name "Department of Construction and Permits," or "DCAP").

¶ 16    In the "Professional of Record Self-Certification Statement" they signed, the Hanna defendants certified that the information contained in the permit application was accurate and was prepared by them; that they exercised a professional standard of care in the preparation and submission of the documentation; that DCAP would rely upon the truth and accuracy of this self-

certification statement; that they will take all remedial measures necessary to meet DCAP's requirements if DCAP determines that the plans do not conform to the law; and that they will immediately correct any false statements made in the plans. They also certified that "the failure to take any such corrective action may result in termination of [their] participation in the [SCPP] and notification to the Illinois Department of Professional Regulation."

¶ 17    The form signed by the developer was called an "Owner/Tenant Certification Statement." In that statement, the developer certified the following:

> "I have authorized all professionals named on the attached plans and application by the applicant {and consultant(s), if any} named herein. I agree to take the necessary measures to correct any misrepresentation or falsification of facts made knowingly or negligently by my agents, contractors, employees, or me. I also agree to take any remedial measures, disclosed by the Department of Buildings and or applicant, licensed professionals or subcontractors named herein, that are necessary to bring the attached plans and any completed construction into conformity with all applicable provisions of the Municipal Code of Chicago and other related state and federal laws and regulations."

¶ 18    After designing the Building and certifying the SCPP application, the Hanna defendants had no further involvement in the development of the Building.

¶ 19    Based on the documentation, including these self-certifications, the Department issued the developer the building permit in mid-2008. The Building was completed in 2009, and all units were sold by 2010. Each unit was then re-sold to the current owners between 2010 and 2014; that is to say, each of the unit owners comprising the plaintiff association are successive purchasers.

¶ 20    On Halloween 2014, Chicago experienced a major windstorm. According to the testimony at trial, these gusts caused the Building to begin swaying, which in turn led to cracking and serious structural damage. Because of the severity of the damage, plaintiff hired Clark Baurer, a structural engineer, to assess the Building's structural soundness. Upon review, Baurer quickly determined that the Building was designed, and subsequently built, without a lateral support system that complied with minimum wind pressure requirements of the Building Code.

¶ 21    According to various estimates, the remediation of this defect would cost the Association between $500,000 and $1.5 million. While the cost of repair was heavily contested throughout trial, there was no real disagreement about whether Hanna's plans were deficient. In fact, Hanna admitted that he did no structural calculations and went with a "gut feeling."

¶ 22    To recover these damages, plaintiff filed suit against the entities involved in the design and construction of the Building, including the developer, the general contractor, the marketer/seller of the units, and the Hanna defendants. As to the Hanna defendants, in an amended complaint, plaintiff alleged intentional and negligent misrepresentation, negligence, and an implied private right of action under a city ordinance and its corresponding SCPP program.

¶ 23    The misrepresentation and negligence claims were dismissed during motion practice, as they were barred by the *Moorman* doctrine, in that plaintiff was seeking to recover purely economic losses through a tort claim. See *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982) (tort actions seeking purely economic loss cannot lie); *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 311-13 (1990) (*Moorman* doctrine barred tort actions for purely economic loss against architect); *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 168-70 (1997) (unable to "find any

substantive difference between architects and engineers for purposes of the economic loss rule," holding that *Moorman* barred tort actions for purely economic loss against engineers who design building plans). These tort counts are not a part of this appeal.

¶ 24   As for its claim of an implied private right of action, plaintiffs alleged "the City of Chicago Building Code" and the affirmative representations the Hanna defendants were required to make in their Self-Certification Statement imposed duties on the Hanna defendants to truthfully execute the Self-Certification Statement.

¶ 25   The Hanna defendants moved to dismiss the count claiming an implied cause of action, arguing that the claim failed to meet the elements of a private right of action. They claimed that neither the city ordinance authorizing the SCPP nor the SCPP program itself provided the basis for an implied right of action. Plaintiff responded that its claim was brought "under the Code provisions governing architect certification of Code-compliance, and applicable lateral structural support requirements." Plaintiff argued that the "Code was engaged to protect the safety of City residents, and prevent the construction of unsafe and structurally deficient buildings." At the same time, they contend a private right of action is consistent with the SCPP and is necessary for them to have an adequate remedy.

¶ 26   The circuit court entered a memorandum opinion denying the motion to dismiss the claim for an implied cause of action. In that order, the court determined that:

> "10. The City of Chicago's Self-Certification Permit Program was established to increase efficiency in plan certification while maintaining the inherent safety purposes underlying Chicago's building codes and regulations. Members of plaintiff condominium association are tangentially members of the class for whose benefit the program was

created, and a private right of action would be consistent with the underlying purpose of the program.

11. Plaintiff's alleged injuries are ones the program was designed to prevent, and providing a private right of action is necessary to provide a remedy for Plaintiff, as the remedies enumerated under the program only provide relief options for the City and paths of admonishment against violating architects. As such, this court infers a private right of action under the City of Chicago's Self-Certification Permit Program and Plaintiff's Count V survives."

¶ 27    Plaintiff filed a second amended complaint that re-pleaded Count V, the implied cause of action. The Hanna defendants moved to dismiss it for nearly identical reasons, and the court denied it without written order. At this stage, the only remaining claim against the Hanna defendants was the implied cause of action. Because the Hanna defendants still insisted that plaintiff could not state a claim for an implied cause of action, they sought to certify the following question to this court, pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

"Whether a professional architect who submits plans and specification for the improvement of real property to the City of Chicago through the City's Self-Certification Permit Program can be subject to liability under an implied private right of action for failure to properly discharge the program's requirements."

¶ 28    The court denied that request, and the case proceeded to a bench trial. The evidence presented mostly revolved around the scope of the Building's deficiency and the cost of remediating it. As we briefly mentioned above, there was no real question about whether Hanna's design lacked the required lateral wind supports; the Hanna defendants conceded that

their submitted plans were not Code-compliant. (We need not go into further detail about the evidence at trial, as it is unnecessary to our disposition.)

¶ 29 After trial, the court entered a memorandum opinion and judgment of $1,506,339.46 in favor of plaintiff and against the Hanna defendants on count V, the implied cause of action. In the judgment order, the court expanded on its basis for implying a cause of action:

"The ordinance's sole remedy requires the correction of the plans. That, on its face, is ineffective to remedy the construction of a faulty building based on plans that were represented in compliance with the city's wind loads. In this instance, not having an implied right of action under the ordinance would render the ordinance ineffective as a practical matter. As discussed earlier in this litigation, the plaintiff does not have contractual remedies for this condition, tort remedies, or other statutory remedies as to the defendant architect that approved the plans. Clearly, plaintiff is a group the ordinance was designed to protect.

* * *

The remedy of simply requiring a defendant to correct the plans if brought to his attention by the building department clearly is not itself going to guarantee compliance. The court finds that it is necessary to imply a private cause of action in order to provide an adequate remedy to protect the public from persons who recklessly self-certify their plans."

¶ 30 The Hanna defendants timely filed their notice of appeal following the judgment order.

¶ 31                                              ANALYSIS

¶ 32 Before this court, the Hanna defendants claim that the circuit court should have dismissed the sole count that proceeded to trial, which claimed an implied right of action under an ordinance in the Chicago Municipal Code or the SCPP program implemented thereunder. They

argue that a municipal ordinance cannot be the source for an implied cause of action, nor can a program implemented pursuant to those ordinances. They further argue that allowing such a claim here would eviscerate the *Moorman* doctrine and our supreme court's application of *Moorman* to lawsuits against architects. See *2314 Lincoln Park West Condominium Ass'n*, 136 Ill. 2d at 311-13 (*Moorman* doctrine barred tort action against architect for negligent design). And lastly and more simply, they argue that, even if a cause of action could be implied under these circumstances, it should not have been. Our review of these legal questions is *de novo*. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004); *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 391 (1999).

¶ 33    We begin with the basics. A statute may provide for an express right of action to redress a violation of its provisions. See, *e.g.*, 210 ILCS 45/3-603 (West 2020) (under Nursing Home Care Act, nursing home resident "may maintain an action under this Act for any other type of relief, including injunctive and declaratory relief, permitted by law"); *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 461 (1999). There is no claim here, however, of an *express* cause of action.

¶ 34    When a statute prescribing or proscribing certain conduct does not expressly provide for a private right of action to redress violations of its provisions, a court will sometimes find an *implied* private right of action in that statute. To find an implied right of action, a court must determine that (1) the plaintiff is a member of the class for whose benefit the statute was enacted, (2) the plaintiff's injury is one the statute was designed to protect, (3) implying a private right of action would be consistent with the purposes of the statute and the overall statutory scheme, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Metzger*, 209 Ill. 2d at 36; *Fisher*, 188 Ill. 2d at 460. We will recognize an implied right of action in a statute only if the plaintiff demonstrates all four of those factors. *Abbasi*, 187

Ill. 2d at 396 ("Since the fourth factor of the [test] is not present, we do not recognize a private cause of action under the Act.").

¶ 35    Here, however, there is no statute at issue. Plaintiff points to no state law to support its claim. Instead, to the extent plaintiff identifies any legislative enactment whatsoever—an issue we will discuss below—it is a municipal ordinance, a provision of the Chicago Municipal Code.

¶ 36    Notwithstanding the protests of the Hanna defendants, there is *some* support for the proposition that a court may imply a cause of action in a municipal ordinance. See *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶¶ 74-75 (finding that Chicago Municipal Code provided for *express* cause of action for violation of one of its provisions, then suggesting, in *dicta*, without further discussion, that had it not been express, it would have satisfied four-factor test for implied cause of action). The court in *Henderson* seemed to assume that a cause of action could be implied in a municipal ordinance without elaborating, and the brief discussion was unnecessary to the outcome, given that an express cause of action existed. As far as the parties and we can discern, this is the only decision standing for, or even suggesting the proposition that a municipal ordinance may serve as the basis for an implied cause of action.

¶ 37    We do not see any particular reason why a municipal ordinance could not serve as a basis for an implied cause of action. Like a statute, a municipal ordinance may *expressly* provide for a cause of action to redress a violation of its provisions; that is not unusual at all. See, *e.g.*, Chicago Municipal Code § 13-72-100 (amended Nov. 16, 2011) (providing for cause of action to remedy violations of ordinance); *Henderson Square Condominium Ass'n*, 2015 IL 118139, ¶ 74. So if a cause of action may be implied from a statute, it is not clear to us why the same could not be implied from a municipal ordinance.

11

¶ 38    But regardless of whether we accepted the proposition that a court could imply a cause of action in a local ordinance, we must first stop and make this fundamental observation, so basic that it should go without saying: the plaintiff must first *identify* the specific ordinance that was violated. A court cannot imply a cause of action out of thin air; the plaintiff must identify the legislative enactment that the defendant allegedly violated, so that the court can review the language of that enactment, along with the overall statutory scheme in which that enactment is contained, to determine whether that violation should be redressable by a private lawsuit. See, *e.g.*, *Metzger*, 209 Ill. 2d at 34-35 (in determining whether to imply private right of action in certain provision of Personnel Code, supreme court began by reviewing language of particular provision, then overall statutory scheme); *Carmichael v. Professional Transportation, Inc.*, 2021 IL App (1st) 201386, ¶ 23 (in determining whether to imply private right of action in particular statute in Illinois Vehicle Code, "we begin by discussing the statutory language we are asked to interpret").

¶ 39    Unfortunately, we are compelled to make this fundamental observation because plaintiff has not been clear at all as to what ordinance in the Chicago Municipal Code, if any, it claims as the source for its implied right of action. Throughout its lengthy argument in its brief on this topic, plaintiff never once cites to, much less quotes from the language of, a particular municipal ordinance that the Hanna defendants allegedly violated.

¶ 40    Much like it did before the trial court, in its brief on appeal, plaintiff alternates between referencing one of three sources for its implied cause of action, almost interchangeably and often in tandem: (1) the Chicago Building Code generally, (2) the SCPP program itself, and (3) the self-certification statement that Hanna signed and submitted to the Department. Plaintiff opens its argument on this topic with this: "The trial court properly allowed [plaintiff] to pursue a

12

private right of action against Hanna arising from the false and reckless certifications it made to obtain a building permit pursuant to the SCPP." No mention of an ordinance, just the self-certification statement and the SCPP program generally. Elsewhere, plaintiff writes that "[t]he Unit Owners are members of the class that the Code and the SCPP were intended to protect," and plaintiff's "injuries are ones that the Code and the certifications were designed to prevent."

¶ 41    The closest thing to a municipal ordinance there is the reference to the Chicago Building Code, which is not one but a vast *series* of ordinances contained within several different chapters of the broader Chicago Municipal Code. See, *e.g.*, Chicago Municipal Code § 1-4-90(h) (amended Sept. 6, 2017) (detailing various chapters and sections of Chicago Building Code, including all or portions of the Chicago Municipal Code's Titles 13, 14C, 14E and 18; Chapters 2-22, 7-4, 7-28; article III of Chapter 11-4; Chapters 15-8, 15-12 and article I of Chapter 15-16; section 8-4-090; and various other provisions).

¶ 42    But a violation of a duly enacted law, be it a statute or local ordinance, is specific to that statute or ordinance. Someone who commits a criminal offense does not violate the Criminal Code of 2012 writ large but a specific provision within it; an individual does not commit a civil violation of an entire statutory scheme but a specific section within it. Without a violation of a specific ordinance, plaintiff has nothing on which to base an implied cause of action.

¶ 43    The circuit court's thinking seemed to shift during the litigation, as well. As previously detailed, the circuit court, in initially denying the Hanna defendants' motion to dismiss this implied cause of action, relied on the SCPP program itself: "this court infers a private right of action under the City of Chicago's Self-Certification Permit Program." Later, however, in its memorandum opinion and order entering judgment in favor of plaintiff, the court ruled that it was implying a right of action from the "self-certification ordinance," meaning section 13-32-

13

031 of the Chicago Municipal Code, the ordinance that gave the Department the authority to create the SCPP. See Chicago Municipal Code § 13-32-031 (repealed at Chi. City Clerk J. Proc. 100799 (Apr. 10, 2019)).

¶ 44    That ordinance, in our view, is the only conceivable ordinance that could serve as the basis for an implied cause of action here. We say that because it is the only ordinance, period, that addressed the concept of self-certification. As noted above, at the time the Hanna defendants signed the self-certification in 2008, the Department had yet to promulgate rules to implement the program. So there were no rules governing the Hanna defendants' conduct; there was only the single ordinance giving the Department the authority to institute a self-certification program (which, at the time in 2008, the Department did by issuing the self-certification statements that the Hanna defendants and the property developer signed). Thus, notwithstanding the somewhat evasive and murky way in which plaintiff presents its claim, it is clear that the only ordinance on which it could rely for its claim of an implied cause of action is the self-certification ordinance within the Chicago Municipal Code.

¶ 45    Working through the four-factor test for implied causes of action, the trial court wrote that "plaintiff is a group the ordinance was designed to protect" and that the damage to plaintiff's building was "exactly what the certification was intended to protect against: Plans that do not comport with the building-code requirements." Regarding the third factor, the court found that implying a cause of action would be "consistent with the underlying purpose of the ordinance," namely "truthfulness in the submission of the plans." As to the fourth factor, the court found that the existing remedies within the ordinance were insufficient, as "[t]he ordinance's sole remedy requires the correction of the plans," which was small comfort to the plaintiff unit owners at this late date.

¶ 46    We begin our review with the language of this ordinance at the relevant time:

"The building commissioner shall have authority to institute the preliminary review program, the customized review program, the superstructure permit program, the developer services program, and other programs *which may include programs authorizing qualified licensed design professionals to self-certify plans presented to the building commissioner* pursuant to the requirements of Chapter 13-40 for compliance with the requirements of this code, and, to issue permits and to assess fees thereunder accordingly. Applications under these programs shall be in such form as shall be prescribed by the building commissioner. The building commissioner shall have authority to promulgate such rules and regulations as necessary for the implementation of these programs, including, but not limited to, the establishment of eligibility criteria for participation in such programs and auditing procedures." (Emphasis added.) *Id.*

¶ 47    This ordinance is obviously a delegation of authority to the Department to create the SCPP, prescribe forms for SCPP applications, and promulgate rules to implement the SCPP. A legislative delegation of authority is necessary here because an administrative agency like the Department has no authority absent that which the legislature provides it by law. See *Prazen v. Shoop*, 2013 IL 115035, ¶ 36.

¶ 48    But that is all the ordinance does, merely delegate authority. It does not regulate or outlaw any conduct by the parties (architects, engineers, developers, etc.) who submit the plans. It contains no details whatsoever governing the program. It does not even mandate the creation of the program—it merely says the Department "may" create one. *Id.* This ordinance, as legislation often does, speaks in broad strokes and leaves the details to the administrative body to implement.

¶ 49    We cannot agree that we can imply a cause of action from this ordinance. First and foremost, before even reaching the familiar four-factor test for implied causes of action, we do not see how the Hanna defendants could be said to have violated that ordinance. Architects are neither directed nor prohibited from doing anything under this ordinance. If this ordinance could be said to direct any party, it is the Department, if it so chooses, to implement the SCPP. There is no substantive provision of this ordinance for an architect to violate.

¶ 50    The absence of a violation of a statute (or ordinance) is a death knell for a claim of an implied cause of action. The only reason to even consider implying a private right of action in a statute or ordinance is to redress a *violation* of that enactment. See *Carmichael*, 2021 IL App (1st) 201386, ¶ 33 ("[e]very implied-right-of-action suit involves a defendant's alleged failure to comply with the statute at issue" (internal quotation marks omitted)); see also *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 386 (1982) ("when a statute is enacted to protect a particular class of individuals, courts may imply a private cause of action for a violation of that statute").

¶ 51    Even if we overlooked that fatal flaw, plaintiff cannot satisfy the four-factor test for an implied cause of action that we reiterate here, that (1) the plaintiff is a member of the class for whose benefit the statute was enacted, (2) the plaintiff's injury is one the statute was designed to protect, (3) implying a private right of action would be consistent with the purposes of the statute and the overall statutory scheme, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Metzger*, 209 Ill. 2d at 36; *Fisher*, 188 Ill. 2d at 460; see *Abbasi*, 187 Ill. 2d at 396 (all four factors must be met to imply private right of action in statute).

¶ 52    We cannot find that plaintiff is a member of the class for whose benefit the ordinance was enacted. The purpose of a self-certification program is obvious—to streamline and expedite the permitting process, reduce bureaucracy, "cut red tape" as one might say. The architect or engineer is allowed to circumvent the traditional departmental review of its plans in favor of self-certification. Obviously, one would hope that safety and soundness of buildings would not be sacrificed as a result—thus the self-certification. But we could not possibly find that the creation of a deregulatory provision that removes government oversight from the permitting process is aimed at enhancing safety; its purpose was obviously to make it quicker and easier for contractors to obtain their permits.

¶ 53    In addition, even if we could construe this ordinance as having been "violated" by the Hanna defendants' false self-certification (we cannot), and even if we believed (as we do not) that the plaintiff homeowners are part of the class for whose benefit this ordinance was enacted, we are not as confident as the trial court and plaintiff that implying a right of action against the architect is necessary to effectuate this SCPP program. Both the trial court and plaintiff have noted that the self-certification that the Hanna defendants signed provided only for limited remedies: that, in the event that the self-certified architectural plans were not Code-compliant, the architect (1) could be expelled from the SCPP program and (2) would be required to correct those plans. As both the trial court and plaintiff note, those remedies would be cold comfort to a homeowner, post-construction, who is living in a house with structural defects.

¶ 54    (Of course, the language in the self-certification statement that the Hanna defendants signed, containing promises and imposing those remedies, are not part of the municipal ordinance. They were not even part of a promulgated *rule* at the relevant time. They were simply forms the Department put together. So it is a bit clunky to even consider this language as if it

17

were part of the ordinance, or even part of a greater scheme of ordinances, when it was neither. This, in our view, only highlights that this ordinance is not a proper vehicle for an implied cause of action. But both the trial court and plaintiff rely on the language in the self-certification statements, so we will, too, for purposes of argument.)

¶ 55 With that caveat, we certainly understand, from a homeowner's viewpoint, how those remedies would not feel like any remedy at all. But we cannot agree, for two different reasons, that an implied right of action under this ordinance is necessary to effectuate this ordinance.

¶ 56 First, the most recent decisions of our supreme court on this question have made it clear that the focus should be on whether an implied right of action is necessary to enforce the provisions of the statute, *not* on whether a particular plaintiff could recover from a particular defendant. Consider most notably *Metzger*, 209 Ill. 2d at 32, where our supreme court considered whether to imply a private right of action in section 19c.1 of the Personnel Code. See 20 ILCS 415/19c.1 (West 2002). That statute, a whistleblower provision, protected state employees who reported employee misconduct from retaliation for that reporting, but it provided no express cause of action for a whistleblower who experienced retaliation. *Id.*

¶ 57 Metzger claimed that the court should imply a right of action under section 19c.1, in part because the Personnel Code provided her only the remedy of filing a grievance, which was inadequate to compensate her for the stress and other damages she suffered from the retaliation when she was reassigned to an unfavorable position and experienced other abuse. *Id.* at 41. Our supreme court, however, reasoned that the question was not whether Metzger, or even others like her, could recover adequate damages; her argument "inappropriately focuse[d] on the claimed right to compensation for her injuries rather than on whether adequate remedies are provided to make compliance with the Personnel Code likely." *Id.*

¶ 58     Likewise, in *Abbasi*, 187 Ill. 2d at 393, our supreme court declined to imply a private right of action for the violation of a provision of the Lead Poisoning Prevention Act. The court reasoned that an implied private suit was not necessary to enforce that provision, as the same defendant could be held liable in a traditional negligence claim. In the court's words, "a common law negligence action effectively implements the public policy behind the Act. The threat of liability is an efficient method of enforcing a statute." *Id*. at 395.

¶ 59     In other words, the question is not whether a homeowner can obtain compensation from the architect for a violation of this municipal ordinance, but whether adequate enforcement mechanisms and remedies exist to deter violations of that ordinance without a private right of action. And we find that adequate incentives exist to enforce this self-certification program.

¶ 60     For one, if we are to consider the self-certification statements here, as did plaintiff and the trial court, we should at least also consider the self-certification that the *developer* signed, which we mentioned previously. Unlike the architect, who is merely charged by its self-certification statement to correct any non-compliant plans and perhaps face expulsion from the SCPP program for making false or inaccurate statements, the developer certifies that he agrees not only to "correct any misrepresentation and falsification of facts" made in the permit submission but also to "take any remedial measures" to bring "*any completed construction* into conformity with all applicable provisions of the Municipal Code of Chicago and other related state and federal laws and regulations." (Emphasis added.)

¶ 61     In other words, the buck stops with the developer—the owner of the property—who agrees to take whatever measures to fix any defects stemming from non-compliant plans it self-certified, including making changes to the building post-construction. After all, it is the developer/owner who is granted the permit to build the property, not the architect, who is simply

19

one of many professionals the owner hires to get the building constructed. And the Chicago

Municipal Code traditionally assigns blame for Building Code infractions on the property *owner*,

not someone the owner hired to do the work. As section 13-12-020 of the Chicago Municipal

Code, titled "Code Violations Liability," clearly explained in relevant part at the time in

question:

> "Unless otherwise expressly provided, the owner *** [of] a building or premises of
>
> which there is a violation of the provisions of [the Building Code] shall be liable for any
>
> violation therein *** and is subject to injunctions, abatement orders or other remedial
>
> orders." Chicago Municipal Code § 13-12-020 (amended Apr. 12, 2000).

¶ 62 So even if it were appropriate to consider the promises contained in the self-certification

statements signed by the Hanna defendants and the developer as part of the ordinance and its

overall scheme, they demonstrate that the City of Chicago *does* have an enforcement method to

redress the submission of non-compliant architectural drawings, even if that remedy does not

directly reach the architect. And it could well reach the architect indirectly; the developer/owner

will be held liable, at least by the city, for Code violations—and of course would be free to sue

the architect with whom it contracted to recover the cost of any remedial work to fix the

architectural defects. The fact that a homeowner may not directly sue the architect does not

change the fact that the city has a sufficient enforcement scheme to deter violations of the SCPP.

¶ 63 That dovetails into our second reason why we find that an implied cause of action against

the architect is not only unnecessary to effectuate the SCPP program but inappropriate here. In

deciding whether to judicially imply a cause of action in a statute, our supreme court and this

court have considered whether doing so would unsettle well-established common law.

¶ 64    For example, we return to *Metzger*, 209 Ill. 2d at 44-45, where our supreme court

declined to imply a cause of action in the Personnel Code's whistleblower statute. Metzger had

not been fired but merely reassigned to an unfavorable position. The supreme court noted that it

had only recognized a narrow class of common-law claims for workplace retaliation, and even in

those limited contexts, only when an employee was discharged. *Id.* at 44. The court emphasized

that it had "*never* recognized a common law tort for any injury short of actual discharge."

(Emphasis in original.) *Id.* Thus, the court was not inclined to imply a private right of action for

workplace retaliation that fell short of discharge from employment: " '[G]iven this court's

reluctance to expand the common law in this area, we must also hesitate to imply such actions

under a statute without explicit legislative authority.' " *Id.* at 45 (quoting *Fisher*, 188 Ill. 2d at

468).

¶ 65    Likewise, in *Thompson v. Tormike, Inc.*, 127 Ill. App. 3d 674, 675 (1984), this court

refused to imply a private right of action in a Chicago Municipal Code nuisance ordinance.

Thompson had slipped in a restaurant's ice-covered parking lot and claimed that the parking lot

constituted a "nuisance" under that ordinance. *Id.* at 674-75. That ordinance contained no express

cause of action, but Thompson argued that we should imply one. We refused, among other

reasons, because allowing a private nuisance suit for not removing ice would run counter to

longstanding common law regarding the duties to remove snow and ice:

> "[T]he law of Illinois is that a landowner has no duty to remove or take other precautions
>
> against the dangers inherent in natural accumulations of snow and ice. [Citations.]
>
> Liability will be imposed only where the injury occurred as a result of snow and ice
>
> which is produced or accumulated by an artificial cause or in an unnatural way or by
>
> defendant's own use of the area concerned and creation of the condition. [Citations.]

21

Were we to allow a private cause of action under a public nuisance theory, we would

defeat the established law in Illinois regarding liability for removal of snow and ice. We

refuse to do so." *Id.* at 676.

¶ 66     A court's reluctance to imply a private right of action, when doing so would unsettle

longstanding common law, is a critical consideration here. As we mentioned before and the

parties are well aware, because the doctrine played out in the pretrial litigation here, under the

*Moorman* doctrine, a home purchaser may not sue an architect in tort for poor design work that

results in purely economic loss, such as the cost to repair architecturally unsound construction.

See *2314 Lincoln Park West Condominium Ass'n*, 136 Ill. 2d at 311-13 (*Moorman* doctrine

barred tort actions for purely economic loss against architect); *Moorman*, 91 Ill. 2d at 81 (tort

actions seeking purely economic loss cannot lie).

¶ 67     The reason is that "[t]he architect's responsibility originated in its contract with the

original owner," not the purchaser to whom the owner sold the home, and "if the purchaser buys

goods which turn out to be below its expectations, its remedy should be against the person from

whom it bought the goods, based upon the contract with that person." (Internal quotation marks

omitted.) *2314 Lincoln Park West Condominium Ass'n*, 136 Ill. 2d at 317. Thus, homeowners

must direct their claims for purely economic loss against those parties with which they have

contractual privity, with their claims sounding in breach of *contract* for breach of a *contractual*

duty. See *Fattah v. Bim*, 2016 IL 119365, ¶ 24 ("a [home] buyer's desire to enjoy the benefit of

his bargain is protected by the law of contracts and is 'not an interest that tort law traditionally

protects.' " (quoting *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 177 (1982)).

¶ 68     Simply put, if a contractual relationship exists between the architect and the homeowner,

the homeowner may resort to contract law to redress a breach of that contractual duty, but a

dissatisfied homeowner may *not* resort to tort law for redress against that architect. See *2314 Lincoln Park West Condominium Ass'n*, 136 Ill. 2d at 315-16. In *2314 Lincoln Park West*, the architect was hired by the developer of the condo building and had no contractual relationship with any of the unit owners who sued that architect. *Id.* at 305. And their tort claims were barred by the economic-loss rule. *Id.* at 317-18. The unit owners were thus left without a remedy against the architect.

¶ 69     The plaintiff unit owners here are no different. They were far removed from any contractual relationship with the Hanna defendants, who were hired by the developer, who sold the properties to the original owners, who then re-sold the properties to the current plaintiff owners. So the plaintiff unit owners understandably did not even attempt to sue the Hanna defendants for breach of contract. And their tort claims were dismissed before trial based on *2314 Lincoln Park West* and its application of the economic-loss rule to architects. Thus, like the unit owners in *2314 Lincoln Park West*, they are without a remedy against the architect in either contract or tort under the common law.

¶ 70     We thus agree with the Hanna defendants that, if we were to imply a cause of action in the municipal self-certification ordinance as plaintiff requests, we would significantly unsettle the common-law doctrines in this area. We would be creating a non-contractual cause of action against an entity that the common law disallows. To paraphrase *Metzger*, given our supreme court's "reluctance to expand the common law in this area, we must also hesitate to imply such actions under a [municipal ordinance] without explicit legislative authority." *Metzger*, 209 Ill. 2d at 45 (citing *Fisher*, 188 Ill. 2d at 468).

¶ 71     For all of these reasons, we find no basis to imply a private right of action in the municipal self-certification ordinance.

23

¶ 72    We would be remiss if we left this analysis with the impression that all is lost every time a home buyer discovers significant structural defects. We emphasize that this lawsuit and the trial, after numerous original defendants were dismissed, ultimately isolated one actor in this narrative—the architect. It is not uncommon at all for a home buyer in a situation like this one, faced with significant structural defects, to sue entities with whom they *did* have a contractual relationship. And that is to say nothing of the implied warranty of habitability, which usually runs with the property from the first purchaser of new construction to the second, allowing a second purchaser to still reach the original owner/builder for breach of that implied warranty for significant structural defects. See *Fattah*, 2016 IL 119365, ¶¶ 25-26; *Redarowicz*, 92 Ill. 2d at 184.

¶ 73    Here, it so happens, the developer of the property and the general contractor were dissolved corporations when this lawsuit was filed. Plaintiff obtained a default judgment against the latter, and it ultimately dismissed its claim against the developer for breach of implied warranty of habitability because the original owner had *waived* that implied warranty, which waiver extended as well to the second purchaser under *Fattah*, 2016 IL 119365, ¶ 35.

¶ 74    To call this a series of unfortunate events is an understatement. But as sympathetic as we may be with the situation in which the plaintiff unit owners find themselves, we find no basis to imply a cause of action in the municipal ordinance authorizing the SCPP. As that was the sole basis on which plaintiff obtained judgment against the Hanna defendants, that judgment is reversed.

¶ 75    Reversed.

**No. 1-20-0594**

| | |
|---|---|
| **Cite as:** | *1541 North Bosworth Condominium Association v. Hanna Architects*, 2021 IL App (1st) 200594 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-9990; the Hon. Diane M. Shelley, Judge, presiding. |
| **Attorneys for Appellants:** | Thomas B. Orlando, Douglas J. Palandech, Joel B. Daniel, of Foran Glennon Palandech Ponzi & Rudolff PC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Daniel S. Brennan, Carolyn L. Morehouse, of Laurie & Brennan LLP, of Chicago, for appellee. |